JULY TERM, 1881, No. 27.

## The First National Bank of Bethlehem
### versus Peisert.

1. Knowledge acquired by the president of a bank in the course of its business that moneys deposited with it by a depositor in his individual account belonged to an estate of which he was the assignee for the benefit of creditors, affects the bank with notice.

2. Such moneys cannot be appropriated by the bank to the payment of notes held by it, made or indorsed by the depositor, where the president has such knowledge, though no actual notice of the trust has been given to it.

3. Moneys so appropriated may be recovered back by the assignee.

4. Harrisburg v. Tyler, 3 W. & S., 373, followed.

[The First National Bank of Bethlehem *v.* Peisert.]

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUN-
KEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas of *Northampton
County.*

Assumpsit by C. Edward Peisert, assignee for the benefit
of creditors of I. L. C. Miller, against the First National
Bank of Bethlehem, to recover a balance of moneys deposited
with the defendant, and alleged to belong to the said estate.

Upon the trial in the Court below, before MEYERS, P. J.,
the facts appeared to be as follows:

November 4th, 1873, Miller and wife made an assignment
for the benefit of creditors to Peisert, the plaintiff. The
assigned estate consisted mainly of real estate in Bethlehem.
For several years before the assignment, Peisert had kept
an account with the defendant in his individual name. In
February, 1876, Peisert sold the real estate,—a lot to Samuel
H. Young for $325.25, and another property to John Walt-
man, of Philadelphia, for $12,153.10. The latter was to pay
ten per cent. in cash, and the balance in October following.
February 16th, 1876, Peisert deposited on his individual
account with the defendant:

| | | |
|---|---:|---:|
| Cash, | $ 50 | |
| Check of Mrs. Rebecca Miller, wife of the assignor, | 400 | |
| Check of John Waltman, | 750 | |
| | | $1,200 |
| On June 15th, 1876, he deposited | | 350 |

October 6th, 1876, he deposited:

| | | |
|---|---:|---:|
| Cash, | $ 400 | |
| Check of Mrs. Rebecca Miller, | 1100 | |
| Check of J. Waltman, | 9600 | |
| | | $11,100 |

These amounts were the proceeds of the sale of the real
estate belonging to the assigned estate, and were entered in
the books of the bank as "cash." The credit balances of
Peisert's account with the bank were at different dates as
follows:

| | |
|---|---:|
| December 30th, 1876, | $10,369 67 |
| April 21st, 1877, | 6,701 53 |
| December 26th, 1877, | 6,364 68 |
| December 28th, 1878, | 5,402 44 |

At the latter date the cashier of the bank, by order of the
board of directors, charged against this balance four unpaid

promissory notes, some drawn and others indorsed by Peisert, payable at the bank, and held by it, amounting to $3854.16. This entry was made without the consent of Peisert, and reduced his balance to $1548.28. February 4th, 1879, another note of $227.06 was in the same way charged against him, and at his request the balance of $1321.22 was transferred to a new account, in the name of "C. E. Peisert, assignee of I. L. C. Miller." This sum was subsequently reduced by checks to $1076.12.

The assignee filed an account, and the auditor, in June, 1879, awarded to the defendant, as its *pro rata* of an indebtness due to it by the assignor, the sum of $1116.78, and the balance of $11,140.25 to various other creditors. The assignee demanded from the defendant the amount of the moneys appropriated to the payment of the notes held by it, which was refused.

*C. E. Peisert*, for the plaintiff, testified in substance:

"The assignment was made, I think, some time in 1873, and I kept the property up to some time in 1876. I do not distinctly recollect now, but I think I was then notified by the bank that I must sell it. I recognized Mr. C. A. Luckenbach at the sale. He was then president of the First National Bank. The bank was a creditor of I. L. C. Miller. I think he (Luckenbach) said that he bid $10,000 on the property."

"Q. When did you first find out that those notes were charged against you on the books of the bank?

"A. It seems to me, on the 4th of February. I got the book at that time. That was the first I knew of it. I knew of it then by looking at the book, and when I saw it, as a matter of course, it troubled my mind, and I went over to the bank—I think I went to the cashier—and I told him that I saw that those notes were charged against me, and that the money belonged to the Miller estate, and that I thought it was wrong, and I wanted it changed then into another account,—into an account of I. L. C. Miller, which they did. It appears here.

"Q. Did you ask him to change the whole account or only the balance?

"A. The balance which was remaining. At that settlement the notes were handed to me. I got them back, and I protested against the proceedings. I have those notes here, except one on which I could not lay my hands."

*William Leibert*, for the plaintiff, testified:

"I became security for Mr. C. E. Peisert, assignee of the estate of I. L. C. Miller, for the benefit of creditors. I signed his bond. I had a conversation with the president of the

[The First National Bank of Bethlehem *v.* Peisert.]

First National Bank in relation to my suretyship. That was in the winter of 1877–78, if my memory serves me right. I am not certain where the first conversation took place, whether he called at my place or called me into his room. He told me he wanted to make me aware of the fact that Mr. Peisert had deposited the funds of the I. L. C. Miller estate, and that those funds were getting less, and that it was right I should know it. I do not know now whether he told me how much of the fund was still left in the bank, but he told me that at several other times. He told me I should take care, and also that it was necessary I should know it. The first time he mentioned the amount, I think he said there was still $7000 remaining out of the whole amount. Then there was a conversation after that which I think was in the president's room of the bank, and he went over the ground again, saying that the funds were still less. He might then too have said how much was left then, but I am not positive about that, whether he told me more than once. He got the big book, and we went over the account and counted up what the amount really was. He said that the money belonged to the estate of I. L. C. Miller; and he told me that Mr. Peisert had deposited all those funds in his individual name, and was drawing upon them. He did not say anything about what the bank was going to do. But I knew myself that Peisert owed the bank; I was indorser on one of Peisert's notes to the bank. He spoke to me more with reference to the suretyship than with reference to my being on the notes. I told him at one time that I held a sort of a security in the shape of a mortgage on Peisert's property, which I did not consider worth a great deal at the time. He did not ask me for that mortgage, but I think I offered it to him. I thought, since I was on Peisert's bond, if the bank would take that mortgage off my hands, so that I would not have anything more to do on account of being on Peisert's bond, I would be glad. Peisert did not know anything about this, to my knowledge."

*I. L. C. Miller*, for the plaintiff, testified:

" I am the assignor in this case. I made a general assignment for the benefit of creditors in 1873. My property immediately adjoined the bank building on the north side.

" Q. Did you have any conversation with Mr. Luckenbach, president of the First National Bank, relative to the deposits of your assignee?

" A. He stopped me one time in front of the bank, at least four years ago, and spoke to me about it. It was about the time, I think, when these funds were to be distributed

that he asked me. I said I could not tell. He mentioned then that so much was in bank of the fund. I think he said there was ten or seven thousand dollars; I can't tell which, but I am positive it was at least seven thousand. I was surprised, and I said, 'Why where in the world is the balance?' He did not say where the other was. It surprised me. He said there was seven or ten thousand dollars. I think it was seven thousand, but I am not positive. It was one of the two. This was at least four years ago.

"We have had conversations since,—that is, as to Mr. Peisert's using the money. He said that Peisert was using the money, and so they had gone to work and charged up these notes.

"Q. Did he say that he knew that it was money that belonged to your estate?

"A. He said, about the seven or ten thousand dollars, that it was my money. Of course, that was the conversation; that was what started it. Since that time he merely said that Peisert had been using this money; and that as he was using it, and it was going in that way, they had charged up these notes against him; that they seen it was going, and so they charged them up. I was present at the sale of my house at the Sun Hotel. I saw Mr. Luckenbach there, but I can't say that I saw him bid."

*Charles A. Luckenbach*, for the defendant, testified:

"In 1876, and for some time previous to that, I was president of the First National Bank of Bethlehem.

"Q. State whether you had any knowledge, at the time this $1200 and this $11,000 were deposited, that those moneys belonged to the assigned estate of I. L. C. Miller, and if so, how you obtained that knowledge?

"A. I did not have any such knowledge, and for the reason that such things are deposited with the teller, and do not come under the observation of the president. At that time, or about that time, I had not examined Mr. Peisert's account.

"Q. Did you have a conversation with Mr. Leibert about this matter, and if so, state what it was, how it arose, and what was said?

"A. Well, I do not doubt but that I had conversations with him and in regard to this matter. The exact conversations as they took place I could not repeat, but I can give you the substance of them. I knew at the time that Mr. Peisert was the assignee of Miller, which everybody knew. I knew also that he sold that property for the amount of, in the neighborhood of, $12,000. That is what I did know. I knew that he was the assignee of Miller, and that Miller's debts

amounted to quite a considerable sum; I guess, I am not sure, but I think they amounted to a great deal more than his estate amounted to.   As I always do once in a while, I would look over the ledger, to see what is going on, and so I noticed that Mr. Peisert's credit which he had there was getting less and less: and I knew at the same time, too, that Mr. Peisert was financially in a very bad condition; and knowing all these things, and knowing also that Mr. Leibert was interested quite a good deal in Peisert, that he was on notes for him in our bank, and all this kind of thing, and Mr. Miller being a neighbor, these men would frequently come and talk with me.   Whether they came to me at those conversations, or I went to them, I can't remember, but most likely they would come to me and ask me about it, and so I undoubtedly told them that Mr. Peisert was using this money which he had to his credit individually, and I did not know that Peisert had any other money, and that this money was his, and he could do as he pleased with it, and they being bondsmen, so I just told them of it, that Peisert was using this money for his own purposes, and then I thought they might do as they pleased about it after I had told them."

Defendant proposes to prove by the witness that he never notified the board of directors of the First National Bank of Bethlehem, that any money was deposited in that bank by C. E. Peisert belonging to the assigned estate of I. L. C. Miller.

Objected to on the ground that the knowledge of the president, acquired in the course of business, is the knowledge of the bank, and, further, that it is irrelevant.

The objection was sustained, and the defendant excepted.

The plaintiff presented the following point, *inter alia,* which the Court affirmed:

Fourth.   If the bank had knowledge that the funds against which they charged Peisert's notes were the funds of the assigned estate of I. L. C. Miller, and charged up said notes with such knowledge, the true owner is entitled to recover from the bank the amount of said notes, together with interest from the time of demand, to wit, from July 1st, 1879.

The defendant presented certain points, *inter alia,* which, with the answers of the Court, were as follows:

Second.   As the money was deposited in the defendant's bank, in the name of C. E. Peisert, the bank had the right to pay out of the funds on deposit any notes due to the bank by him, or upon which his liability was fixed as indorser for others.

A. This point is affirmed, unless the bank had knowledge that the balance of the money in bank was part of the trust-fund of the estate of I. L. C. Miller.

Third. The bank is not liable in this case, unless actual notice was given to them, before the payment of the checks of C. E. Peisert, or the delivery to him of the notes due, that the money deposited belonged to the assigned estate of I. L. C. Miller.

A. Not affirmed. The law does not require notice, but that knowledge is sufficient.

Fourth. The plaintiff in this case cannot recover anything from the bank, unless it appear that there is a balance remaining in its hands, after the payment of the checks of C. E. Peisert and the notes on which he was drawer or indorser, and which were due when charged to his account, and the amount of the dividend upon the claim of the defendant against the assigned estate of I. L. C. Miller.

A. We cannot affirm the point as drawn. We affirm the point, if you find the bank had no knowledge, at the time it appropriated the money to the payment of the notes mentioned in the point, that the money was part of the trust-estate of I. L. C. Miller.

Fifth. There is no evidence in the case that any of the creditors of I. L. C. Miller, who were awarded dividends by the auditor, are unpaid, and the plaintiff, therefore, cannot recover.

A. This point is not affirmed. It is immaterial whether the creditors of Miller are paid in full or not.

Sixth. The deposits being in the name of C. E. Peisert, the bank had the right to treat the funds as his property, charging up all his checks and matured notes payable at that bank, until notice was given to the bank that another person claimed the funds.

A. Not affirmed. It is not necessary that notice should have been given to the bank, but, if it had knowledge that it was a trust-fund, that was sufficient.

Seventh. Knowledge, on the part of the bank officers, that trust-funds were included in the account of C. E. Peisert, would not prevent the bank from paying out the funds in answer to his checks, drafts and notes, made payable at said bank, until after notice given not to pay.

A. This point is not affirmed as drawn. So far as it relates to the payment of checks drawn by Peisert, it is affirmed, and to so much as relates to the application of money to the notes of Peisert, it is also affirmed, unless you find that the bank had knowledge at the time the money was applied that it was part of the trust-estate of I. L. C. Miller.

Eighth. Under all the evidence, the verdict must be in favor of the defendant.

A. Not affirmed.

The Court further charged the jury, *inter alia :*

It is claimed by the plaintiff that this was an improper and illegal appropriation of this money by the bank, for the reason that it was trust-money, that the $5402.44 was part of the trust estate of I. L. C. Miller, for the benefit of creditors.

It is contended on the part of defendant that C. Edward Peisert cannot recover in this case as assignee, for the benefit of creditors of I. L. C. Miller, for two reasons: First, because the account between the bank and Peisert was an individual account, and, second, that this estate has been partly settled up, that he has filed his account, that an auditor has been appointed, and that distribution has been made to the creditors of I. L. C. Miller.

[We say to you, that, where a person makes an assignment to another for the benefit of creditors, the assignee represents the assignor. He does not represent the creditors, and so the Supreme Court of this State has held in many cases. He stands in the place of the assignor, I. L. C. Miller, and in a proper case, where money is in the hands of a third person, that is trust-money, the only person who has a right to bring an action, that is, if it was trust-money which was at one time in the hands of the assignee, is the assignee himself. If he wants to recover a debt that is owing to the assignor, in such a case, the suit must be brought in the name of the assignor, I. L. C. Miller, to the use of C. Edward Peisert.

With regard to this action, assuming for the present that there was a right of action in somebody against the First National Bank of Bethlehem, we say to you as a matter of law that C. Edward Peisert, as assignee, under the facts, as presented by him, was the only person who was legally entitled to bring an action against the bank.]

\*          \*          \*          \*          \*          \*          \*

Now, the inquiry is, was this balance of five thousand four hundred and two dollars and forty-four cents part of the trust-money at the time these notes were paid by it? If it was, then the next inquiry will be, was it legally appropriated in the payment and discharge of these notes?

[It is contended by the plaintiff, that, if the bank had knowledge before the appropriation of this money to the payment of these notes, that then such appropriation was illegal, unless it was by the consent and direction of C. Edward Peisert. On the part of the defendant, it is contended

that mere knowledge is insufficient, and that the defendants were legally authorized, even though they knew that this was trust-money, to appropriate it to the payment of these notes, unless somebody, to whom it legally belonged, gave the bank notice not to make such an appropriation, because it appeared upon their books as having been deposited in his individual name. Now I confess that the law upon this subject is not very clear, but, as we understand it, we shall hold for the purpose of this trial and so charge you that knowledge on the part of the defendant that the five thousand four hundred and two dollars and forty-four cen⊓ was part of the trust-estate of I. L. C. Miller for the beⅬefit of creditors, was sufficient to prevent them from appropriating this money in the discharge and payment of the notes held by the bank, without direct authority from C. Edward Peisert. Therefore, the only question for your consideration on this branch of the case is, whether the defendants had knowledge that these five thousand four hundred and two dollars and forty-four cents was part of the trust-estate of I. L. C. Miller.]

[There is no doubt that, notwithstanding it was trust-money, if C. Edward Peisert had drawn a check upon the bank for any amount and for his own use, and not for the use of the trust estate, and had presented it to the bank, the bank would have had to pay it, and the law would have protected them in so doing. The decisions of the Supreme Court go as far as that. But that Court has not exactly decided whether the bank can do that where they have knowledge that it is a trust fund. Still I suppose, that, even if they had knowledge that it was a trust fund, yet, if the assignee had prepared his check on the bank for the payment of a certain amount of money, the bank would have been justified in paying it.

It is contended on the part of the defendant that two of .the notes were drawn by C. Edward Peisert, and that, if they were payable at the time the money was appropriated, the bank had a right to appropriate the money for the purpose of protecting the indorsers.

On that point we say to you that if the bank knew that this was trust-money they were not bound to appropriate it. It was their duty to protest the notes, and if. they had sued the indorsers and they had set up as a defence that there was money enough in the bank, the latter could have answered that it was trust-money and that plea would have been sufficient.]

Of course if the money is not trust-money, and it was in point of fact the individual money of Peisert, then, in a case

like that, I agree with the learned counsel for the defendants, that where a note of the maker, payable at the bank, matures and there is a sufficient fund there belonging to the maker, the bank is bound to appropriate that fund, if sufficient to pay the note, for the purpose of protecting the indorser.

The argument would not apply, however, to a note on which he was only an indorser. But we say to you, so far as these notes are concerned, that the bank, if it knew at the time when it appropriated the money that it was part of the trust fund of I. L. C. Miller's estate, that then it had no right to appropriate.

Now, had they knowledge? That is the question. Miller, the assignor, testifies that he had a conversation with Mr. Charles Luckenbach, who was the president of the bank, about four years ago, in which they spoke about Mr. Peisert having money in the bank, that there was then about ten thousand dollars in the bank yet, or seven thousand, I do not recollect exactly which, and that they spoke about it as part of the Miller trust fund. That is testified to by Miller. It is claimed on the part of the plaintiff that Miller testified it was expressly stated in that conversation with Luckenbach, that the money which Peisert was drawing out was trust-money of the estate of I. L. C. Miller.

Mr. Leibert was also examined as a witness, and he testified that he had a conversation in 1878 with Luckenbach, and that in that conversation Mr. Luckenbach spoke of the conduct of Peisert in drawing out this money, and stated to him that there was then a certain balance remaining of four or five thousand dollars. The plaintiff claims that both of these witnesses testify explicitly to declarations made by Mr. Luckenbach, that the conversations were with reference to this trust fund of Miller in the bank at the time.

Mr. Luckenbach has been examined on the other side. He says that he did have conversations with these parties, but that he never said anything to them of the trust fund of the Miller assigned estate. He testifies that he knew that Mr. Leibert was somewhat involved with Peisert as an indorser, and that he afterwards heard that he was upon his bond as assignee, and that he spoke to him and Miller generally upon the subject of the conduct of Peisert in drawing money out of the bank, but that he did not say anything at all about its being the fund of the Miller assigned estate, giving as a reason why he did not, because he did not know as a fact that Peisert had deposited that money in the bank at that time.

[The plaintiff in this case, before he can recover, must

satisfy you by the weight of the evidence, not only that the bank appropriated this money in the payment of the notes, but that when they appropriated it the bank, through its officer, Charles A. Luckenbach, had knowledge that this fund belonged to the estate of I. L. C. Miller for the benefit of creditors. The plaintiff must show that. If he fails to satisfy you of that fact, then he cannot recover in this action. If he satisfies you of that fact, then he is entitled to recover the amount of money appropriated to the payment of the five notes, together with interest.] The plaintiff will give you a statement how much that is, and your verdict will be for that amount.

If, however, on the other hand, the plaintiff has failed to establish that fact of knowledge, then your verdict will be in favor of the defendant.

Now, one word more upon this subject of knowledge. The evidence upon which the plaintiff relies, in this case, while it is not claimed that express notice was given to the bank not to appropriate this money or to pay it out, but that there are certain circumstances connected with these conversations that you have a right to take into consideration whether from them you cannot infer notice.

You will bear in mind that the bank was a creditor also of I. L. C. Miller, and if you believe the testimony of Miller and Leibert, that this conversation took place in the way testified to by them, then it is your duty to inquire what was the object and purpose of Mr. Luckenbach in giving these parties notice. They testified that he told them certain things about the conduct of Mr. Peisert, and that after he had done so, he thought they might do as they pleased— "might take their chance about it." Of course, Miller and Leibert are interested. Miller is the assignor, whose interest it is to have his debts paid. Mr. Leibert is interested on account of his suretyship for the assignee. If these parties had gone to the bank and told Mr. Luckenbach not to appropriate the money, he would have been bound by such notice.

[When Mr. Luckenbach volunteered to inform them that Peisert was appropriating this money to his own use, and if you believe the witness when he testified that he, Luckenbach, knew that Peisert did not have much of an estate himself, and that he was financially involved, and made declarations to that effect, and at the same time spoke of the money in bank as the Miller fund, then, the question arises, could not Mr. Miller and Mr. Leibert treat that conversation as an intention on Luckenbach's part, not perhaps to prevent Mr. Peisert from appropriating this money to his

[The First National Bank of Bethlehem *v.* Peisert.]

own use, but that he himself would not appropriate that money to the payment of the debts of Peisert to the bank. We refer to this as bearing upon the question whether or not from it you can infer some sort of notice to Mr. Luckenbach, as to the application and appropriation of this money.

If you find from the evidence, either that there was knowledge by the bank that there was trust-money, or an implied notice not to appropriate it, and the plaintiff has established that by the weight of the evidence, then he is entitled to a verdict for the amount of the notes with interest from the time the money was appropriated. If he failed to establish it, then your verdict will be for the defendant.]

April 25th, 1881. Verdict for the plaintiff for the amount of the notes and interest, on which judgment was subsequently entered.

The defendant then took out a writ of error, assigning as errors the answers to the points as above, the portion of the charge within brackets, and the rejection of the evidence offered.

*Robert E. Wright, Jr.*, and *Edward J. Fox*, for the plaintiff in error.

When an assignee for the benefit of creditors deposits the funds of the estate in his own name, it operates as a conversion, and renders the assignee the debtor of the estate : Commonwealth *v.* McAlister, 4 Casey, 481 ; Bank *v.* King, 7 P. F. Smith, 202 ; Stair *v.* Bank, 5 P. F. Smith, 368.

The bank could not set up the unasserted title of the *cestui que trust:* Bank *v.* Mason, 9 W. N. C., 265 ; Laubach *v.* Leibert, 6 Norris, 62.

No matter what may have been the knowledge of the bank, Peisert could have diverted the fund to any use he wished by check.

A bank has the same right to charge against the account of the depositor his note made payable at the bank as his check : Marsh *v.* Bank, 34 Barb., 298 ; Reed *v.* Penrose, 12 Casey, 235.

It was the duty of the bank to charge up these notes at maturity : Bank *v.* Mason, 9 W. N. C., 265 ; Laubach *v.* Leibert, 6 Norris, 62.

In no event could there be a recovery by the assignee, suing in his capacity as such. It could not be recovered by the trustee, who had himself made the deposit and used the fund. Only the *cestui que trust* could intervene.

Knowledge, to affect the bank, must be brought home to the directors ; Bank *v.* Rex, 7 W. N. C., 167 ; see, also, Jack-

[Appeal of John Horner *et al.*]

son *v.* Bank, 10 Barr, 61 ; Paxson *v.* Sanderson, 3 Phila.,
303 ; Bank *v.* Macalester, 9 Barr, 475 ; Bank *v.* Jones, 6
Wr., 536 ; Frazier *v.* Bank, 8 W. & S., 18 ; Stair *v.* Bank, 5
P. F. S., 365.

*W. E. Doster*, for defendant in error.

If the bank knew of the trust, they had no right to appropriate the money to their own use: Bank *v.* Macalester,
9 Barr, 482 ; Davis *v.* Bowsher, 5 T. R., 492 ; Jarvis *v.* Rogers,
15 Mass., 397 ; Frazier *v.* Bank, 8 W. & S., 18 ; Bank *v.* Tyler,
3 W. & S., 373 ; Smuller *v.* Canal Co., 37 Penna., 68 ; Bank *v.*
Jones, 42 Penna., 536.

MARCH 27TH, 1882.—PER CURIAM: That the president of
the bank knew that the moneys deposited by the plaintiff
were the funds of the assigned estate of Miller, was a fact
of which there was ample evidence, and it was fairly submitted to the jury. This knowledge he acquired in the
course of the business of the bank. That from such knowledge the bank is affected with notice is very clearly settled
in Harrisburg *v.* Tyler, 3 W. & S., 373, and other cases.

Judgment affirmed.