### HOWARD MILLNER v. THE STATE.

#### No. 3200.    Decided June 26, 1914.

#### Rehearing denied October 14, 1914.

**1.—Murder—Accomplice—Severance.**

Where defendant was tried as an accomplice to murder, and both he and his co-defendant made affidavits asking for a severance, and could not agree on the order of the trial, there was no error, under article 727, Code Criminal Procedure, in the action of the trial judge in placing defendant upon trial.

**2.—Same—Affidavit—Severance—Justice of the Peace.**

Where the affidavit of the co-defendant for a severance was in conformity with the statute and taken before a justice of the peace, the same was sufficient.

**3.—Same—Former Jeopardy—Accessory—Accomplice.**

Where the indictment contained two counts, one charging him with being an accomplice, and the other with being an accessory, and on a former trial, both counts were submitted to the jury who convicted him of being an accomplice, and defendant was again convicted of being an accomplice on the same indictment, there was no error in ignoring his plea of former jeopardy as to the offense of being an accessory to the crime, no testimony being admitted which was not admissible to prove that he was an accomplice.

**4.—Same—Evidence—Reproduction of Testimony.**

Where one of the State's witnesses was beyond the jurisdiction of the court, and the other was dead, there was no error in reproducing their testimony given at a former trial. Following Robertson v. State, 63 Texas Crim. Rep., 216, and other cases.

**5.—Same—Evidence—Declarations of Principal.**

Upon trial of defendant as an accomplice to murder, there was no error in not admitting in evidence the statement made by the principal to a third party in regard to the killing while said principal was in jail for the offense of murder.

**6.—Same—Self-defense—Charge of Court—Strength of Parties.**

Where, upon trial of murder as an accomplice, the court fully charged on the law of self-defense as to the principal, and the evidence raised the issue

of the relative strength of the parties, there was no error in the court's charge including the same in his charge on self-defense.

### 7.—Same—Evidence—Confessions of Principal.

Where, upon trial of defendant as an accomplice to murder, the court admitted in evidence the confession of the principal in said crime and properly limited the same to the purpose for which it was admitted, that the principal was guilty of unjustifiable homicide, there was no error.

### 8.—Same—Evidence—Acts of Defendant.

Upon trial of murder as an accomplice, there was no error in refusing to permit defendant to prove that the deceased had been having illicit intercourse with a negro woman.

### 9.—Same—Continuance—Fourth Application—Want of Diligence.

Where defendant's fourth application for continuance did not show proper diligence, and the absent testimony was immaterial and some was incompetent, there was no error in overruling the application.

### 10.—Same—Evidence—Irrelevant Testimony.

Upon trial of murder as an accomplice, there was no error in not permitting the defendant to prove that the wife of the deceased was aware that her husband visited a house of ill-fame.

### 11.—Same—Evidence—Bill of Exceptions.

Where the bill of exceptions did not state what answer the witness would have given to the question propounded, the same can not be considered on appeal; besides, it appeared from the record that defendant was permitted to testify fully on the issue involved.

### 12.—Same—Evidence—Conduct of District Attorney.

Where defendant admitted in his testimony on direct as well as cross-examination that he had had illicit intercourse with the wife of the deceased, the question of the State's attorney, if he had not debauched the dead man's wife, was not reversible error, the court instructing the jury not to consider same.

### 13.—Same—Evidence—Declarations of Principal.

Where, upon trial of murder as an accomplice, the court declined to permit defendant to testify as to what the principal had told him at the time of their first meeting after the homicide, and it appeared from the record on appeal that the defendant was permitted to testify that he knew nothing about the whole transaction, and the additional fact he desired to show would have added no strength to his testimony that he was not an accomplice, there was no reversible error.

### 14.—Same—Evidence—Motive.

Where, upon trial of murder as an accomplice, defendant contended that he had not been criminally intimate with the wife of the deceased until just a short time before the homicide, it was permissible for the State to show that this intimacy had extended over several months; as tending to show a motive for the homicide.

### 15.—Same—Evidence—Circumstantial Evidence.

Where it was shown that defendant had secured a ten dollar bill to aid a friend who was in trouble, etc., there was no error in permitting the State to show that a bill of this denomination together with defendant's watch was in possession of the principal of the crime.

### 16.—Same—Evidence—Res Gestae.

Upon trial of murder as an accomplice, there was no error in admitting the declarations of the principal that he had killed the deceased, as this was

res gestae, the court not permitting the witness to testify. what the wife of the deceased, defendant's co-defendant, said at the time.

### 17.—Same—Evidence—Allusion to Defendant's Failure to Testify.

Where defendant was told at the examining trial by the justice of the peace that he had the right to make a statement if he desired to do so, this was not a reference to the fact that he did not make a statement, the court instructing the jury that his failure to make such statement could not be used against him and should not be considered by the jury; besides, it was by reason of the objections being made by defendant that this occurred, and there was no error. .

### 18.—Same—Conduct of District Attorney.

Where the fact was made manifest that defendant could not call his co-defendant as a witness, the statement of the district attorney in the hearing of the jury, that this co-defendant was not a competent witness, would not present error.

### 19.—Same—Misconduct of Jury—Impeaching Verdict.

A juryman will not be allowed to impeach his verdict, after he has been discharged, by saying that he only agreed to the verdict of guilty on the ground that defendant could petition for a pardon.

### 20.—Same—Motion for New Trial.

Bills of exception which are not contained in the motion for new trial, filed long after the adjournment of the trial court, will not be considered on appeal; however, the court did consider them, and finds no reversible error.

### 21.—Same—Sufficiency of the Evidence.

Where, upon trial of murder as an accomplice, the evidence was sufficient to sustain the conviction under a proper charge of the court, there was no error.

### 22.—Same—Indeterminate Sentence—Reforming Judgment.

Where the jury found a verdict assessing a penalty of twenty years imprisonment for murder, and defendant should have been sentenced under the indeterminate sentence law to a term of imprisonment in the penitentiary for not less than five nor more than twenty years, the Court of Criminal Appeals has authority to reform and correct the judgment, and it is so ordered.

Appeal from the District Court of Bee. Tried below before the Hon. F. G. Chambliss.

Appeal from a conviction of murder; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*J. Gus Patton* and *J. A. Patton* and *John Baker,* for appellant.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, JUDGE.—This is the second appeal in this case, the opinion on the former appeal being reported in 72 Texas Crim. Rep., 45, 162 S. W. Rep., 348. On this trial appellant was again convicted of being an accomplice to the murder, and his punishment assessed at twenty years confinement in the State penitentiary.

The evidence in the case is fully stated in the opinion of Presiding

Judge Prendergast, and the concurring opinion of Judge Davidson on the former appeal, therefore we do not deem it necessary to restate the facts. Sufficient to say that the evidence for the State showed that appellant was criminally intimate with deceased's wife; appellant visited the camp of deceased on Friday during his absence, remaining at the camp Friday night, and he admits he had sexual intercourse with deceased's wife that night, deceased being absent from the camp. Eli Pointer, who was convicted as a principal, was present at the camp Friday night, and kept the children of deceased and Mrs. Gosnell in another tent, while appellant was with Mrs. Gosnell. Saturday morning Eli Pointer carried appellant to the railway station, and he took the train and went to Placedo. Gosnell returned home Saturday, and he and Pointer got in the buggy to go to the camp, and on the way to the camp Pointer killed Gosnell, shooting him in the back of the head three times. Pointer went to the camp, secured one of Gosnell's horses, and also went to Placedo, getting to the boarding house where appellant was stopping about daylight.

The State proved by Mr. Bailey that appellant had talked to him before the killing about getting Mrs. Gosnell a divorce, and had inquired about how much of the property they could get from Gosnell; by a witness that appellant on Saturday tried to borrow $30, saying at the time he wanted to aid a friend who was in trouble to escape; that he did borrow $10 from his boarding house keeper, and this bill was later secured from Pointer's possession as was also appellant's watch; that he tried to employ another man, a Mr. Miller, to get rid of Gosnell, and there were many other facts and circumstances which would authorize a jury to find that he advised, commanded and encouraged Pointer to commit the offense, and the killing was committed under a pre-arranged agreement between Pointer and appellant, and the evidence fully sustains the verdict.

There are a large number of bills of exception in the record which is very voluminous, and we will take them up in the order in which they are presented in the record. In the first bill it is again contended that the court erred in placing appellant on trial before Mrs. Gosnell was tried. Both appellant and deceased's wife were indicted charged with being an accomplice of Eli Pointer in the killing of Mr. Gosnell. Appellant filed a plea asking that she be first tried, and she also filed a plea of severance, and asked that he be first tried. They being unable to agree, the court in the exercise of the discretion conferred on him by law entered an order placing appellant first on trial. Article 727 specifically provides that if two or more of such defendants make such affidavit and can not agree on the order of trial, then the presiding judge shall direct the order in which the defendants shall be tried. The affidavit of Mrs. Gosnell was in conformity with the statute, and a justice of the peace under our laws is authorized to take affidavits.

In the next bill appellant files a plea of former jeopardy as to the offense of being an accessory to the crime. It appears by the record

that the indictment contains two counts, one charging him with being an accomplice, the other charging him with being an accessory. On the former trial both counts were submitted, and he was convicted of being an accomplice. If on this trial appellant had been convicted of being an accessory, a more serious question would have been presented, for our decisions seem to hold that when more than one count is contained in an indictment, a conviction under either count is an acquittal of the other counts. But as appellant was again convicted of being an accomplice, the same offense for which he was convicted on the former trial, and no testimony was admitted which was not admissible to prove that he was an accomplice, no reversible error is presented by this bill, for in it and in no other bill is it attempted to be shown that any testimony was admitted which might tend to show that he was an accessory to the crime and was not admissible on the issue of whether or not he was an accomplice.

The third bill relates to the introduction of the testimony of Pete Miller taken at the examining trial. On the former appeal this testimony was held admissible, and we see no reason to change our ruling. The evidence on this trial shows that the last time Miller was heard from he was in France, and there is no suggestion that he has ever again set his foot in the United States. It further appears that he was a refugee from justice, and the sheriff who held the capias for him had made diligent search and had not been able to hear from him or locate him since he was last heard from in France. We had this question before us in the case of Whorton v. State, 67 Texas Crim. Rep., 187, 152 S. W. Rep., 1082, and Robertson v. State, 63 Texas Crim. Rep., 216, and therein discussed in full the rules under which a dead or absent witness' testimony can be reproduced, and we see no reason to reverse our holding. And under those decisions, it appearing that Mr. McBride is dead, and had died since the last trial of the case, there was no error in permitting his testimony at the former trial to be reproduced.

Again it is contended that statements made by Eli Pointer to Lonnie Smith and others in regard to the killing of Mr. Gosnell should have been admitted. We do not think anyone could or would contend that if Pointer himself was on trial such statements would be admissible in his behalf, nor could the State introduce them, he being in jail charged with being a principal in this offense. The law would not and does not permit him to testify in behalf of his co-defendant, and if he could not testify if called as a witness, certainly statements made by him when he was incompetent as a witness are not admissible. We discussed this question at length in Wyres v. State, 74 Texas Crim. Rep., 281, 166 S. W. Rep., 1150, and cited the authorities, giving the reason for the rule, quoting approvingly the law as laid down by Judge White in Long v. State, 10 Texas Crim. App., 186: "If he can not testify in person, how can he state facts to others and thereby enable them to

testify to matters wholly derived from him? To permit this would be to abrogate the law." Art. 791, C. C. P.

The court presented the issue of self-defense fully in his charge, other than it was contended that it was error to charge on the relative strength of the parties. No other objection to the charge at the time of the trial was made, and no other error attempted to be pointed out therein. The court instructed the jury that if Pointer in killing deceased acted in self-defense, appellant would be guilty of no offense, and should be acquitted; or if Pointer killed Gosnell for the purpose of robbing him, the jury should acquit appellant. Having presented all the issues fairly and fully, and in a way to which appellant's counsel made no objections at the time the charge was submitted to them for their inspection, the bills complaining of the refusal of the court to give the special charges requested present no error. As to the objection made that the court erred in instructing the jury to take into consideration the relative strength of the parties, it is without merit, for the record teems with evidence brought out by appellant that Pointer was a young man, small, sickly and weak, and under such circumstances the charge was authorized.

Again, it is contended that the court erred in admitting the confession of Eli Pointer in evidence. This question was passed on in the former appeal in this case, and the confession held to be admissible. It was necessary on this trial to prove that Pointer was guilty of unjustifiable homicide, and all testimony going to show that fact if he was on trial would be admissible on this trial to prove that same fact, and we do not think that anyone can contend that if Pointer was on trial the confession would not be admissible. Of course it was admissible only to prove this, Pointer's guilt, and not to prove the guilt of appellant as an accomplice, and had the court permitted it to be so used it would present error. But the court properly limited the purpose for which said testimony was admitted, instructing the jury that same was admitted in evidence "for the purpose of showing and tending to prove that said Eli Pointer killed George Gosnell, and you will consider same for no other purpose in the case." The contention that the jury would ignore such instruction and might consider it for other purposes can not be sustained in the face of such positive instructions.

In the record there are several bills of exception complaining that the court erred in refusing to permit defendant to prove that George Gosnell, deceased, had been having illicit relations with a negro woman. If he had, this would furnish no justification for killing him by appellant and Pointer. Such facts would shed no light on any issue in this case, and the court correctly held it inadmissible.

The eleventh bill complains of the action of the court in overruling his fourth application for a continuance. If Mrs. Gosnell had been present she would not have been a competent witness for defendant. The statute prohibits her testifying in his behalf, and nearly all the other witnesses sought to continue the case for, he admits their residences are unknown. This case has been pending since February 12,

1912, and if in that length of time he has not succeeded in locating them, he has not used the diligence required by law, or could not reasonably expect to locate them by the next term of court. As to the witnesses whose residence he gives, he does not show that they were all in attendance at the former trial of this case, or that any process had been issued for them since that trial in time to secure their attendance at this trial, but if due diligence had been used to secure the attendance of those witnesses whose residence is given, is their testimony admissible or material? By Pointer's father he only states he expects to prove that Eli was a grown man, and a year older than appellant. That would be material to no issue on the trial of the case. Mr. Hurst's testimony would not be admissible, as Mrs. Gosnell was not a witness in the case. The fact that deceased, Gosnell, was drinking on the day he was killed is proven by all the testimony, and is an undisputed fact, and the testimony of the witness Fagan would be but cumulative, and furnishes no ground in the fourth application for a continuance. The facts he states he expects to prove by Mrs. George Simmons were proven by the State by her husband, and is a fact amply proven by the record, and such facts were relied on by the State and were not and could not have been beneficial to the defendant on any issue in the case. The testimony of Albert Max, as to why appellant separated from his wife, would have been admissible on no issue made by this record. The other witnesses named, one a character witness as to appellant, and the other a witness to the fact that Pointer at one time placed his hand in his, Small's, pocket, when he woke up, furnishes no ground for a continuance under the issues involved in this trial, and the court did not err in overruling the application.

There is no merit in the contention that appellant should have been permitted to prove that Mrs. Gornell was aware that her husband permitted to prove that Mrs. Gosnell was aware that her husband been a libertine, but this did not authorize his murder. Mrs. Gosnell may have had grounds to separate from her husband, but this would not authorize a conspiracy to be entered into to have him killed by Pointer. In so far as this record discloses he had never done Pointer any injury, or gave him cause or excuse to kill him, nor gave appellant any ground to conspire with Pointer, if he did do so.

Appellant contends in bill No. 14 that he was not permitted to answer the following question: "What was said and done, if you remember, between you all?" referring to the Friday night before the homicide on Saturday evening when he visited Gosnell's camp. The record discloses that the court permitted appellant to testify: "I made no effort to procure Eli Pointer on that night to kill George Gosnell, I never offered Eli Pointer money for the purpose of killing Gosnell, never mentioned nothing about killing Gosnell at all. I never gave Eli Pointer two bits with which to buy cartridges. I did not offer Eli Pointer five hundred dollars to kill Gosnell, nor did I at the same time tell him that I would pay his attorney's fees if he got caught up with. I never had anything to offer him or even to give him. I did not offer

to give Eli Pointer on that night five hundred dollars for the purpose
of killing George Gosnell. I did not promise to procure for him his
lawyers in case he did the killing to defend him, and I did not tell him
that Mrs. Gosnell and I would swear him out of the trouble he would
get into by killing George Gosnell; there was not anything mentioned
about killing Gosnell at all. There was nothing mentioned about the
death of Gosnell the next morning. After Pointer had gone to his tent,
I did not go with Mrs. Gosnell or separate from Mrs. Gosnell and go
to his tent and wake him up and have a conversation with him there
about the death of Gosnell. I did not mention at any time to Eli
Pointer that he had better kill Gosnell or Gosnell would kill him if he
did not. I was friendly with Gosnell. I never at any time said to
Eli Pointer, 'Eli, I am the best friend you have on earth, and you had
better take the five hundred dollars and go and kill him.' I never said
'If you don't he will be as sure to kill you as we are both living.' I did
not tell Eli Pointer to kill Gosnell and when he did to get on a horse and
meet me in Placedo, there was never nothing said about killing Gosnell,
never at any time, between me and Eli Pointer and Mrs. Gosnell or
anybody else, nor between me and Pete Miller." The bill does not
state what answer the witness would have given to the question pro-
pounded, but in the bill it is said the defendant desired to testify that
neither he nor Mrs. Gosnell had made any effort to get Pointer to kill
Gosnell. As shown above, the court did permit appellant to testify
fully on that issue.

By the next bill it is shown that the district attorney asked appellant
if "he had not debauched the dead man's wife." The court promptly
sustained appellant's objection to the question, and instructed the jury
not to consider it. As appellant in his testimony on direct as well as
on cross-examination admitted he had had illicit intercourse with de-
ceased's wife, under such circumstances the bill presents no error.

As the State had proven that Pointer killed Gosnell late Saturday
evening, and that he at once left and went to the boarding house where
appellant was stopping, called for him, and appellant gave him his
breakfast, and then carried him across the lake, where he was in hiding,
appellant desired to testify all what Pointer told him at the time, but
the court declined to permit him to do so, but did permit him to testify:
"I saw Pointer at Geo. Simmons' that morning after daylight, between
six and seven I guess. I was arrested in this matter Sunday evening,
the day after Gosnell was killed on Saturday. I did not know on
Sunday morning when I talked to Pointer that Gosnell was dead. I
did not know on Sunday morning that Eli Pointer killed George
Gosnell. I got some money from Shelley Barber, and at the time I
was talking to Shelley Barber I did not know that George Gosnell had
been killed by Eli Pointer, nor that Gosnell was dead. I did not know
at that time that Eli Pointer was making or attempting to make his
escape from the charge of murdering Gosnell or any other party. I
had not the least idea that Pointer was dodging for the offense of mur-
dering George Gosnell or anybody else. I did not learn of George

Gosnell being dead until after I was arrested. I learned of his death something like five o'clock Sunday evening. I learned of the death of Gosnell when I was arrested. This was the first time I knew of the death of Gosnell." It appears from the record that everyone else about there seems to have known that Gosnell had been killed except appellant, but be that as it may, it is seen that appellant was permitted to testify that he knew nothing of the transaction, and the additional fact he says he desired to testify to would have added no strength to his testimony as tending to show that he was not an accomplice to the crime.

As appellant contended that he was not criminally intimate with Mrs. Gosnell until just a short time before the homicide, it was permissible for the State to show that this intimacy had extended over several months, as tending to show a motive for the homicide, as this testimony, together with the testimony of Mr. Bailey, tended to show that appellant and Mrs. Gosnell were desirous of assuming the relationship of husband and wife, and the only thing in the way was the deceased, Mr. Gosnell.

There was no error in permitting it to be proven that the sheriff secured a ten dollar bill from Pointer while in jail. The evidence for the State shows that appellant was trying to borrow money to aid a friend who was in trouble to get out of the country; that he did secure a ten dollar bill from Mr. Geo. Simmons, and the fact that a bill of this denomination, together with appellant's watch, was in possession of Pointer, was a cogent circumstance in the case.

What Eli Pointer told Charlie Fagan was res gestae of the killing, and admissible. The court did not permit the witness to testify what Mrs. Gosnell said at the time, and while it was improper to repeat the question in different forms, yet the questions were not of the nature to be prejudicial, and they could not by any stretch of imagination tend in the least to show that appellant had any connection with the killing. The cogent circumstances in this connection are that Pointer admitted to Fagan he had killed deceased; that he left the camp almost immediately on one of deceased's horses, and the next place we hear of him at daylight next morning he is at appellant's boarding house inquiring for him, and appellant proceeds to place him in a place of concealment, and when discovered he had appellant's watch, and apparently the money appellant had borrowed to aid a friend who was in trouble escape from the country.

Pete Miller was the witness who was shown to be in France, and his testimony given at the examining trial was admitted in evidence. In this testimony Pete Miller stated that on Saturday night, the evening of the homicide, appellant asked him to go with him to the railroad station, stating he expected Eli Pointer on the train that night. Appellant denied this on the stand, and testified that while he and Pete Miller did go to the Placedo depot that night, that they went there to get beer for themselves and Geo. Simmons; that he did not go there to get Eli Pointer, and that he did not tell Pete Miller that was his

mission. On cross-examination the State asked him if he was not present when Miller testified; if his attorney was not present, and if he did not hear Miller testify, all of which appellant admitted; then the district attorney asked him why he did not ask Miller if their mission was not to buy beer for themselves, and for George Simmons, instead of going to meet Eli Pointer. The only reason appellant gave was that he had just employed his attorney, and that he did not then inform his attorney that they had gone to Placedo station to buy beer. Appellant was asked if he was told by the justice of the peace that he had a right to make a statement if he desired to do so, and he answered that he was so told. The bill does not disclose that appellant was asked whether or not he did make a statement, but the objection made is that the question as to whether or not he was told he could make a statement if he desired, was a reference to the fact that he did not make a statement. The court says the district attorney was told that he could ask appellant as a witness the simple question, if he was informed he had a right to make a statement, and it will end right there. Appellant then asked the court to instruct the jury in regard to the matter, as appellant contended it had been gotten before the jury that appellant did not make a statement at that time, and the court, at appellant's request, did instruct the jury: "That his failure to make a statement could not be used against him as evidence at all of his guilt or innocence on this trial. You will not consider it as being in evidence." Had the fact that appellant did not testify at that time been elicited over appellant's objection, it would perhaps present error. But the court very promptly sustained appellant's objection before any such testimony was adduced, and if the fact got before the jury that appellant had not testified at the examining trial, it was by reason of the objections being made by appellant, and under such circumstances, when the court instructed the jury not to consider the matter, we do not think it presents reversible error.

In the condition this record is in, the fact that the district attorney stated in the hearing of the jury that Mrs. Gosnell was not a competent witness, would not present error. The fact was made manifest that appellant could not call her as a witness, and the State did not do so, and certainly this could not be hurtful to appellant.

The fact that one of the jurors swears that he was at first in favor of an acquittal, and that he only agreed to a verdict of guilty assessing the punishment at twenty years confinement in the State penitentiary after the other jurymen had told him that if appellant was given that punishment, after he had served ten years, if he behaved himself they would join in a petition for a pardon, presents no ground for a new trial. A juryman is not thus allowed to impeach his verdict after he has been discharged.

We have discussed each of appellant's bills of exception, although many of the claimed errors in the bills were not presented in the motion for new trial. In fact, in the motion for new trial the only grounds alleged are that the court erred in overruling his fourth application for

continuance; in refusing to grant his plea of former jeopardy as to the count charging appellant with being an accessory; that the court erred in permitting the testimony of J. W. McBride, who was shown to be dead, and the testimony of Pete Miller, who was in France the last time he was heard from, to be reproduced; that the court erred in not permitting appellant to give any conversations he had with anyone in reference to the charge herein; that the court erred in not permitting the witnesses to testify that Eli Pointer told them while he was in jail charged with the offense; because the court authorized the jury to consider the relative strength of the parties, and because the court erred in refusing to give his special charges Nos. 1, 2 and 3, and because of the fact that a juryman made affidavit that he agreed to the verdict when the others promised to aid him in getting a pardon for appellant after he had served ten years, there being only nine grounds in the motion embracing only the above matters, and which alone the court was called on to consider in passing on the motion for a new trial. Yet, the court having adjourned on March 14th, some two months after court had adjourned, appellant prepares and files twenty-three bills of exception, some of them setting up matters upon which the court was not given a chance to act on in the motion for new trial. This is hardly fair to the trial court. In the motion for new trial everything relied on to secure a new trial should be presented to the trial court, and we hope in future this will be done. As appellant received a punishment almost equivalent to life imprisonment, we have reviewed each and every one of his bills of exception, yet in fairness to the trial judge, we should have only considered such matters as were presented to him as grounds why he should grant a new trial, for on these and these alone he based his ruling. While some of the matters complained of in some of the bills may, as herein shown, present minor errors, yet none of them could possibly have had any influence or bearing on whether or not appellant was an accomplice to the crime of murdering Gosnell. As said by appellant in the record, the fact is plainly manifest that Pointer killed him, and in our opinion the evidence, while circumstantial only, fully justified the jury in finding that appellant knew it would happen when it did; that he advised and encouraged Pointer in the commission of the offense, and when Pointer killed Gosnell, he at once fled to appellant.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, Judge.—This case was submitted June 24, 1914. It is a very large record, therefore I have not had the time to read the record. I express no opinion as to the questions involved.

ON REHEARING.

October 14, 1914.

HARPER, Judge.—Appellant in his motion for rehearing in this court but reiterates his motion for new trial filed in the trial court.

All these grounds were passed on in the original opinion. Appellant files no brief on his motion for rehearing; cites no authorities in support of his contentions other than were originally cited, and none of which, we think, show any grounds which should necessitate a reversal of this case. Our attention is called, however, to the fact that the court in passing sentence ignored the terms of the indeterminate sentence law, and passed on appellant a definite and fixed term of imprisonment. This he should not have done, but appellant should have been sentenced to a term of imprisonment in the penitentiary for not less than five nor more than twenty years. As this court is authorized to reform and correct judgments, it is ordered that sentence and judgment by the trial court be so reformed as to hereafter read that appellant be confined in the penitentiary for a period of not less than five nor more than twenty years, and judgment so decreeing will be entered herein.

The motion for rehearing is overruled.

*Overruled.*