PEOPLE *v.* TUNNACLIFF.

SEPARATE OPINION.

DETHMERS and O'HARA, JJ.

1. CRIMINAL LAW—BURDEN OF PROOF—AIDING AND ABETTING.
   *The State has the burden of proving the commission of the crime by the principal before defendant, charged with aiding and abetting, could be convicted of aiding in the commission of the crime (CL 1948, § 767.39).*

REFERENCES FOR POINTS IN HEADNOTES

[1] 14 Am Jur, Criminal Law §§ 76, 92.
[2] 14 Am Jur, Criminal Law §§ 92, 93.
   13 Am Jur 2d, Burglary § 44.
[3] 20 Am Jur, Evidence §§ 480, 493.
[4] 14 Am Jur, Criminal Law § 92.
   20 Am Jur, Evidence §§ 480, 493.
[5] 20 Am Jur, Evidence §§ 482, 532–534.
[6] 20 Am Jur, Evidence §§ 532–534, 537.
[7] 20 Am Jur, Evidence §§ 480, 493.
[8] 20 Am Jur, Evidence § 493.
[9] 14 Am Jur, Criminal Law § 92.
[10] 20 Am Jur, Evidence §§ 484, 493.

2. SAME—AIDING AND ABETTING—HEARSAY—ADMISSION OF PRINCIPAL—EVIDENCE—INSTRUCTIONS.

> *The fact that the principal had not been charged with, tried for, or convicted of crime of breaking and entering did not bar receipt in evidence of hearsay admission of principal that he had committed the offense of breaking and entering, made to a third party out of the presence of defendant, charged as an aider and abettor, but instructions must be given that such testimony may not be used as evidence of defendant's guilt in aiding and abetting.*

3. SAME—CONFESSIONS—EVIDENCE—CREDIBILITY.

> *Evidence of verbal confessions of guilt, especially those implicating others than the confessor, must be received with great caution in view of the danger of mistake, misapprehension of witnesses, misuse of words, the failure of the party to express his own meaning, and the infirmity of memory, although it is generally recognized that deliberate confessions of guilt are among the most effectual proofs in the law, the degree of credence to be accorded by the jury to be governed by the circumstances under which they were made.*

4. SAME—AIDING AND ABETTING—CONFESSIONS OF PRINCIPAL—EVIDENCE.

> *The prosecution in a prosecution for aiding and abetting may introduce against the abettor any evidence which would be admissible on the trial of the principal, including his confessions and admissions, although made when the abettor was not present, for the purpose of showing the guilt of the principal although not admissible for showing the guilt of the accused.*

5. SAME—DETERMINATION OF VOLUNTARINESS OF CONFESSION.

> *The voluntariness of confession by aider and abettor must be determined by the trial court on a separate record independently of the jury and where such determination has not been made the case is remanded for new trial for such purpose, and if his confession is determined to be voluntary, the conviction is affirmed, otherwise a new trial is granted.*

### DECISION OF THE COURT.

6. CRIMINAL LAW—CONFESSIONS—DETERMINATIONS OF VOLUNTARINESS.

> New trial is granted person charged with aiding and abetting another in the commission of the crime of breaking and enter-

ing, where defendant's confession had not been determined by the trial court to have been voluntarily made on a separate record before permitting it for consideration by the jury.

7. SAME—AIDING AND ABETTING—CONFESSION OF PRINCIPAL—EVIDENCE.

Admission in prosecution of defendant, charged with aiding and abetting another in the commission of the crime of breaking and entering, of hearsay evidence of confession that he had committed the crime of breaking and entering and which had been made out of the presence of defendant *held*, reversible error, where received over objection of defendant (CL 1948, § 767.39).

8. SAME—CONFESSIONS—ADMISSIBILITY WHEN AFFECTING OTHERS.

A confession is evidence only against the person who made it, and is inadmissible to affect others who participated in the crime either to show motive and intent of the defendant to commit the crime charged, or to inculpate him.

9. SAME—EVIDENCE—AIDING AND ABETTING.

Presentation of evidence showing the principal guilty of committing the crime is a prerequisite of establishing guilt of one charged as an aider and abettor, where the common-law distinction between principal and abettor has been abrogated (CL 1948, § 767.39).

10. SAME—CONFESSION OF PRINCIPAL.

Confession of principal that he had committed crime of breaking and entering, made out of the presence of defendant, charged as an aider and abettor of the principal by giving information to the principal on how to enter the building involved *held*, incompetent and hearsay as to proof of the *corpus delicti* (CL 1948, § 767.39).

Appeal from Shiawassee; Carland (Michael), J. Submitted April 8, 1964. (Calendar No. 23, Docket No. 49,947.) Decided May 10, 1965.

Clifford Tunnacliff was convicted of aiding and abetting crime of breaking and entering in the nighttime. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Norman J. Van Epps,* Special Prosecuting Attorney, for the people.

*Ralph B. Hoschner,* for defendant.

1.

O'HARA, J. (*1, affirmed; 2, remanded*). Clifford Tunnacliff was convicted of breaking and entering in the nighttime in that he "procured, counseled, aided and abetted in the commission of the crime of breaking and entering in the nighttime with intent to commit a felony by giving information to Mr. William Mahar on how to enter into the building known as the Eagles Club * * * in the city of Owosso."*

He is aggrieved by the conviction and has appealed it. He contends that he was convicted upon testimony that was inadmissible. The testimony was by one Roy Smith who said out of the presence of defendant Tunnacliff that William Mahar told him (Smith) that he, Mahar, broke in and took some $800 from a safe in the Eagles Club.

The defendant had been a police officer in Owosso for over 25 years. His duties in part involved trying the doors of commercial establishments at night as he walked his beat. Thus he learned which were vulnerable to easy entry. He allegedly gave specific information to Mahar as to how to effect entry into the Eagles Club, in return for which he received 80-odd dollars. On the trial of the case there was read into the record Officer Tunnacliff's admission by question and answer statement to the prosecuting attorney and chief of police that he had in fact furnished the information and was so paid for it.

It is fundamental, of course, that it was the burden of the State to prove the commission of the crime by Mahar before Tunnacliff could be convicted of aiding in the commission thereof. It was in the course of this proof by the State that the testimony

* Conviction was had with reference to CL 1948, § 750.110 (Stat Ann 1962 Rev § 28.305), and CL 1948, § 767.39 (Stat Ann 1954 Rev § 28.979).

claimed by the defendant to be hearsay as to him
was received. So far as the record shows Mahar
was never convicted of, tried for, or even charged
with the breaking and entering. However, as noted
by the trial judge:

"Now the mere fact that Mr. Mahar has not been
arrested or charged with this crime or convicted of
the crime is of no· moment in deciding the admissi-
bility of this evidence at this time. Suppose, for
example, Mr. Mahar was dead and could not be
prosecuted, or suppose he was in Saudi Arabia and
could not be reached by the process of this court?
Would you then argue that it would be impossible
to prosecute the defendant?"

The point is well taken and admirably illustrated.
The precise question is whether in this prosecution
of Tunnacliff, for aiding and abetting the breaking
and entering by Mahar, the alleged admissions of
Mahar to Smith, even though made in the absence
of Tunnacliff are admissible as bearing upon the
guilt of the principal, Mahar, only. The prosecu-
tion utilized the testimony in establishing the *corpus
delicti* of the breaking and entering by Mahar so
as to lay the foundation for later alleged admissions
by Tunnacliff as to his guilt of aiding and abetting.

Anticipating the question, the able trial judge
had prepared himself for its answer:

"Realizing that this question was going to be
raised: realizing that perhaps it was the most im-
portant question of law involved in this lawsuit, I
have spent two days in the State law library in
Lansing briefing the question myself. * * *

"I think the rule is well-stated in a very late
Pennsylvania case, *Commonwealth* v. *Antonini*, 165
Pa Super 501, 504 (69 A2d 436, 438), wherein it
appears:

" 'In cases where the defendant is on trial charged
with aiding and abetting a crime committed by A,

the confession or declarations of A, be he living or dead, that he committed the principal crime, is evidence against the aider and abettor only to show the commission of the crime by the principal. If the declaration or confession of the principal implicates the aider and abettor, it must be separated from the declaration if possible. If not possible, it may all go in, but for the limited purpose of proving that the principal committed the crime, and the jury must be instructed that it is not evidence of defendant's guilt in aiding or abetting the principal.'"

The trial judge scrupulously observed the restricted basis for admission and charged the jury with precision on the point as follows:

"I further charge you, members of the jury, that in regard to this claimed confession of Mahar, I advise you that confessions of a person are received as evidence of guilt upon the presumption that he will not make an untrue statement against his own interest. The evidence of verbal confessions of guilt, however, is to be received with great caution, for the danger of mistake, from the misapprehension of witnesses, the misuse of words, the failure of the party to express his own meaning, the infirmity of memory, should all be considered by the jury, subject, however, to these cautions. In receiving and weighing them, it is generally agreed that deliberate confessions of guilt are among the most effectual proofs in the law. Their value depends on the supposition that they are deliberate and voluntary, and are on the presumption that a rational being will not make admissions prejudicial to his own interest unless when urged by the promptings of truth and conscience. The degree of credit to be given to the alleged confession is for the jury under the circumstances of the case, and the manner in which it was made. In determining what degree of credit you will give to the alleged confession, you will bear in mind that Mahar has denied the making

of the same, and you will also bear in mind the factors which might motivate such denial by Mahar. In considering this alleged confession, you will also bear in mind that Smith is now in jail, charged with a most serious offense, and you will consider that he might be influenced to give such testimony in the hopes of receiving certain benefits or consideration from the enforcement officials.

"I further charge you, in connection with the alleged confession, that it was received in evidence, *and this is important,* members of the jury. It was received in evidence only for the purpose of proving that Mahar, the principal, committed the breaking and entering. It was not received, and I charge you that *you must not consider it as any evidence of the guilt of Tunnacliff, the defendant, because Tunnacliff cannot be found guilty simply because you find that Mahar committed the alleged crime. Tunnacliff can only be convicted in this case if you find that he aided or abetted in Mahar's crime.*" (Emphasis supplied.)

It is further to be noted that the rule which was reviewed in *Antonini, supra,* appears to be the majority rule.

The following authorities are reflective of the majority view:

"In a prosecution for aiding and abetting another in the commission of a crime, generally speaking, the prosecution may introduce against the abettor any evidence which would be admissible on the trial of the principal, including his confessions and admissions, although made when the aider or abettor was not present, and the limitations on the admission of the evidence of the acts and declarations of *conspirators* do not apply. However, such evidence is admissible only for the purpose of showing the guilt of the principal and is not admissible for the purpose of showing the guilt of accused." (Emphasis supplied.) 22A CJS, Criminal Law, § 781, p 1185.

"That the *confession of a principal* is admissible, on the trial of the *accessory,* to evidence the commission of the crime by the principal, seems clear on the present principle, supposing some evidence of the defendant's co-operation to be first furnished." 4 Wigmore on Evidence (3d ed), § 1079(c), p 133.

In support of the foregoing are the following: *Howard* v. *State* (1899), 109 Ga 137 (34 SE 330); *Millner* v. *State* (1913), 72 Tex Crim 45 (162 SW 348); *Millner* v. *State* (1914), 75 Tex Crim 22 (169 SW 899); *Gibson* v. *State* (1908), 53 Tex Crim 349 (110 SW 41). Additionally, these holdings support the ruling of the trial court.

An analogous case is reported in *State* v. *Mann* (1905), 39 Wash 144 (81 P 561). We quote from the syllabi in 81 P, *supra:*

"9. Where defendant was charged with having aided and abetted his wife to commit the crime of arson, the State could prove confessions and admissions made by the wife showing her guilt, although they also implicated defendant."

Substance of the holding of the Washington supreme court is that such statements are admissible, not to fix guilt of the defendant but rather the guilt of the alleged principal.

"In a trial on a charge of being an accomplice in a murder, it is not error to admit evidence of admissions of the principal for the purpose of establishing the principal's crime, though defendant was not present when the admissions were made." *Wilkerson* v. *State* (Tex Cr 1899), 57 SW 956 (Syllabus 4.)

"Whatever is competent to determine the guilt of the principal is competent, for this purpose against the accessory." *Mulligan* v. *People* (1920), 68 Colo 17 (Syllabus 4) (189 P 5).

In effort to show guilt of relator as accomplice to a murder, an extrajudicial confession of alleged

principal was admissible only for the purpose of showing principal's guilt and could not be introduced for the purpose of showing relator's guilt. *Ex parte Suger* (1946), 149 Tex Cr 133 (192 SW2d 159); *McKenna* v. *People* (1951), 124 Colo 112 (235 P2d 351).

The opposite rationale is discussed in *Ogden* v. *State* (1860), 12 Wis 532 (78 Am Dec 754) among other cases. In a similar situation involving aiding and abetting the commission of the crime of arson, the Wisconsin court dealt with the question. Sidney Wright, the principal felon, had made his escape and no charge of arson was ever made against him. Ogden was charged as an accessory. Evidence of the guilt of Wright was sought to be proved by Wright's admissions made to one Dodd, and one Wheeler, that Wright committed the principal felony —arson. Objection there, as here, was made to the admissibility thereof. There, as here, the alleged admissions were admitted. Said the Wisconsin court, at pages 533, 534:

"It is very evident that upon this testimony the conviction cannot be sustained. In order to establish the guilt of *Ogden,* it was first incumbent on the prosecutor to prove the guilt of Wright as alleged in the indictment. This done, he must then prove that *Ogden* previously procured, hired, advised or commanded Wright to commit the felony. Both these facts must be established by competent evidence. Now, however the confessions of Wright, as to the first, might have been used against him, had he been indicted and put upon his trial, it is very evident that as against *Ogden* they were wholly inadmissible. As to him they were mere hearsay, and open to all the objections which exist to that kind of testimony. For however clearly it may have appeared that *Ogden* counseled and advised Wright to commit the offense, yet if Wright never did so

in point of fact, and the barn was set on fire by some one else, or by other means, then *Ogden* was innocent of the crime with the commission of which he stood charged.

"If such admissions were to be received, Wright, after the advice was given, but without having acted upon it, and being innocent, and believing that his personal safety would not thereby be endangered, might make them, from feelings of ill-will and hatred to *Ogden* for the sole purpose of deceiving and misleading others, and betraying him into the conviction of an offense of which he knew him to be innocent. They were made privately, and without the sanction of an oath; the jury had not the advantage of observing his deportment, or the manner in which his statements were made; no opportunity was afforded to ascertain whether he was friendly or hostile to the accused; he was subjected to no cross-examination, and his motives, means of knowledge and situation, could not be inquired into and exposed. * * *

"The judgment of the circuit court is reversed, and a *venire de novo* awarded."

All parties agree that the precise point is not controlled by any Michigan authority. We are required to choose between the reasons underlying the variant holdings of our sister States as expressed in Pennsylvania and other jurisdictions and the rationale of the Wisconsin decision.

We are constrained to align our State with the majority rule. It represents the consensus of appellate precedent and text authored viewpoint as well, we think, as the sounder rule of law.

We here hold for the limited purpose specified by the trial court in his charge the admissions of Mahar (the principal) made to a third party (Smith) in the absence of accused aider and abettor (Tunnacliff) were admissible. No other assignments of error need be discussed. The verdict of guilty and

the judgment of conviction thereon should be
affirmed.

### 2.

Addendum. Since the foregoing opinion was
served upon my Associates there has been handed
down a decision which affects my vote to affirm the
trial judge. It is this Court's decision in *People* v.
*Walker* (on rehearing), 374 Mich 331. Since the
effective date of that decision, the question of the
voluntariness of defendant Tunnacliff's confession
could not be submitted to the jury trying the issue
of his guilt or innocence unless and until a separate
determination of its voluntary character had been
made by the trial judge. For this reason I am
constrained to abdicate my previous position and
hold that the case must be remanded for compliance
with the rule in *Walker*.

Dethmers, J., concurred with O'Hara, J.

T. M. Kavanagh, C. J. We reverse and remand
for new trial, no determination having been made
upon a separate record on the issue of voluntariness
of the confession of Clifford Tunnacliff as required
by *People* v. *Walker* (on rehearing), 374 Mich 331.
In doing so, we recognize that the trial court did
not have the benefit of the decision in *People* v.
*Walker* (on rehearing), *supra,* since the trial in
this case took place prior to the *Walker* decision.

For the guidance of the trial court at new trial, we
further decide we cannot subscribe to the rule of
those limited jurisdictions which hold, where a de-
fendant is on trial charged with aiding and abetting
a crime committed by another, the confession or dec-
larations of the principal in the absence of the
defendant are admissible in evidence against the

accessory to show the commission of the crime by the principal.

It was reversible error for the trial court in the instant controversy to permit Roy Smith to testify, over objection of defendant, that he, Smith, was told by William Mahar, out of the presence of defendant, that Mahar broke in and took $800 from a safe in the Eagles Club in Owosso.

While Michigan has never ruled on the question, there is a split of authority in other States concerning the rule which would allow such extrajudicial statements to be admitted to establish the *corpus delicti.* We find no clear majority of jurisdictions supporting the rule for admissibility which Justice O'HARA would have this Court adopt.

Justice O'HARA and the trial court rely upon a footnote in *Commonwealth* v. *Antonini,* 165 Pa Super 501 (69 A2d 436), citing *State* v. *Mann,* 39 Wash 144 (81 P 561, 564); *State* v. *Lyda,* 129 Wash 298 (225 P 55); and 4 Wigmore on Evidence (3d ed), § 1079(c). This *footnote* related to a matter not before the court in *Antonini* and was not a part of the decision.

In *Antonini* the court upheld the lower court's granting of a new trial for the reason that inadmissible evidence was permitted in the first trial. This inadmissible evidence was a suicide note of a third party inculpating Antonini. The court held (p 504):

"The instant case is ruled by *Commonwealth* v. *Epps,* 298 Pa 377 (148 A 523), where the defendant was tried for murder. Two other persons had previously been convicted of felonious homicide in the same killing. The confessions of the two other persons implicating Epps were placed before the jury. The supreme court stated, 298 Pa at page 380 (148 A at page 524): 'This was grossly violative of the rights of the accused * * * "A confession is evidence only against the person who made it,

and will not be admitted to affect others who partici-
pated in the crime." (Citing cases.)' "

The court then ruled (p 507):

"In a criminal trial a statement by another that
he and the defendant participated in a criminal act
is not rendered admissible against the defendant
merely because the declaration was against the
interest of the declarant; and it cannot be received
in evidence, either to show motive and intent of the
defendant to commit the crime charged, or to incul-
pate him in either crime;—and this regardless of
whether the declarant be living or dead."

The rule against admissibility of such extrajudi-
cial statements was stated in the leading case of
*Ogden* v. *State,* 12 Wis 532 (78 Am Dec 754). Ogden
was tried as an accessory of another who burned a
barn. The principal Wright was never tried. The
only evidence on the guilt of the principal was his
admissions made to other persons who testified. The
court said (p 533):

"It is very evident that upon this testimony the
conviction cannot be sustained. In order to estab-
lish the guilt of *Ogden,* it was first incumbent on the
prosecutor to prove the guilt of Wright as alleged
in the indictment. This done, he must then prove
that *Ogden* previously procured, hired, advised or
commanded Wright to commit the felony. Both
these facts must be established by competent evi-
dence. Now, however the confessions of Wright,
as to the first, might have been used against him,
had he been indicted and put upon his trial, it is
very evident that as against *Ogden* they were
wholly inadmissible. As to him they were mere
hearsay, and open to all the objections which exist
to that kind of testimony. For however clearly it
may have appeared that *Ogden* counseled and ad-
vised Wright to commit the offense, yet if Wright
never did so in point of fact, and the barn was set

on fire by some one else, or by other means, then *Ogden* was innocent of the crime with the commission of which he stood charged."

The court further said in regard to the statements of the principal (pp 533, 534):

"They were made privately, and without the sanction of an oath; the jury had not the advantage of observing his deportment, or the manner in which his statements were made."

The same rule was followed in *Crowell* v. *State*, 15 Ariz 66 (136 P 279); *People* v. *Oldham*, 111 Cal 648 (44 P 312); *State* v. *Newport*, 4 Del (4 Harr) 567; *State* v. *Bogue*, 52 Kan 79 (34 P 410); *Commonwealth* v. *Tilley*, 327 Mass 540 (99 NE2d 749); *Long* v. *State*, 23 Neb 33 (36 NW 310); *State* v. *Rand*, 33 NH 216; *Rex* v. *Turner* (England), 1 Moody 347 (168 Eng Rep 1298); *Thacker* v. *Commonwealth*, 219 Ky 789 (294 SW 491); *State* v. *Gargano*, 99 Conn 103 (121 A 657); *People* v. *Skelly*, 409 Ill 613 (100 NE2d 915).

Those jurisdictions which rule against admissibility contend such declaration made in the absence of the defendant is totally incompetent hearsay and not worthy of consideration by a court or jury as to proof of the *corpus delicti* relating to the offense of the accused. In the recent case of *Commonwealth* v. *Tilley, supra* (1951), the court held (p 549):

"The testimony of Officer McDermott to the effect that he had heard McAleney plead guilty to the indictment in the case against him was likewise inadmissible. That evidence was plainly hearsay and was nonetheless such because it was in the form of a plea of guilty in court. It does not come within any of the recognized exceptions to the hearsay rule. We are aware that there is authority elsewhere to the effect that a plea of guilty by the principal is admissible at the trial of the accessory to show the

commission of the principal felony. *United States v. Hartwell* (US D Mass, 1869) 3 Cliff 221; *Mulligan v. People,* 68 Colo 17, 27–29 (189 P 5); *Howard v. State,* 109 Ga 137, 140 (34 SE 330); *State v. Roberts (Mullins),* 95 Kan 280 (147 P 828); *Gibson v. State,* 53 Tex Cr 349, 363–366 (110 SW 41). See 4 Wigmore on Evidence (3d ed), § 1079(c). There is authority to the contrary, however. *State v. Rand,* 33 NH 216, 224; *Ogden v. State,* 12 Wis 532 (78 Am Dec 754); *Rex v. Turner,* 1 Moody 347 (168 Eng Rep 1298). See *Commonwealth v. Elisha,* 3 Gray (69 Mass) 460. This rule has never been recognized in this Commonwealth and we are not now disposed to adopt it."

It should be noted that those jurisdictions, which have allowed admissibility of such extrajudicial declarations, have not abrogated the distinction between a principal and accessory and follow the common-law rule as to trial of a principal and accessory.

In *Crowell v. State, supra,* the court held against admissibility of the extrajudicial declaration and stated (p 75):

"The respondent cites the case of *State v. Mann,* 39 Wash 144 (81 P 561), apparently holding a contrary view, but an examination of that case discloses that the court followed the common-law rule, with its distinctions of principal and accessory before the fact, and the cases cited in support of that view are from States in which the distinction has not been abrogated."

See, also, *State v. Bogue, supra,* where the court held (p 85):

"Whatever might be said in favor of the admissibility of such testimony under the common-law practice, where one is indicted as principal and another as accessory, in this State, where accessories before the fact are charged and tried as principals, and

where defendants are permitted to testify in their own behalf, we think the reason, if any there might be, for the admission of such testimony, fails. * * * We are clearly of the opinion that the testimony was inadmissible. (1 Wharton, Criminal Law [8th ed], § 237; *Ogden* v. *State,* 12 Wis 532 [78 Am Dec 754].)"

Michigan has long since abrogated by statute* the common-law distinction of principal and abettor.

The trial court erred in not sustaining defendant's objection to the testimony by Smith that Mahar told Smith, out of the presence of defendant, that Mahar robbed the Eagles Club, for the reason such testimony was incompetent and hearsay as to the proof of the *corpus delicti.*

The sounder ruling as enunciated by the court in *Ogden, supra,* and followed in numerous jurisdictions, is adopted as the law of this State.

Reversed and remanded for new trial.

KELLY, BLACK, SOURIS, SMITH, and ADAMS, JJ., concurred with T. M. KAVANAGH, C. J.

---

* CL 1948, § 767.39 (Stat Ann 1954 Rev § 28.979).