### Harrisburg Bank *against* Tyler.

The declarations of a trustee that an investment made by him was of the trust fund, after his death, may be given in evidence as proof of the fact; it being the confession of one whose sacrifice, by the narration, is an equivalent for his oath.

The declarations of a cashier of a bank of his knowledge that certain stock which stood upon the books of the bank in the name of a certain individual, was a trust fund, invested for the benefit of others, may be given in evidence, under certain circumstances, to charge the bank with knowledge of the fact.

A trust will be enforced, not only against those who are rightfully possessed of the fund as trustees, but also against all others who have obtained it without consideration or with notice of the trust.

ERROR to the Common Pleas of *Dauphin* county.

Charlotte W. Tyler, guardian of Sarah E. Tyler and Edwin Tyler, minor children of Edwin Tyler, deceased, against Harrisburg Bank.

This was an action on the case to recover the damage sustained by the plaintiffs from the defendant's refusal to permit the transfer of 130 shares of bank stock held in the bank in the name of Edwin Tyler, deceased, which they alleged was not his property, although the certificates of stock were in his name. The defendant denied that this was the property of the plaintiffs, but alleged that it was the property of Edwin Tyler at the time of his death, and that he was indebted to the bank in the sum of $6000; and that if he was the owner, it could not be transferred till that debt was paid.

On the 27th of August 1831, Daniel Tyler, the grandfather of the plaintiffs, executed and delivered a deed to Frederick Tyler and Daniel Tyler, jr., conveying land in the State of Connecticut, in trust for the support of his son, the said Edwin Tyler, deceased, and his wife, and also for the support and education of his children, and at the decease of Edwin and wife, the same was to go to the children of said Edwin and wife, and the rents and profits of this land were to be applied for their support and education.

There was a further power delegated to said trustees, that if it was thought best by the said trustees to sell said real estate and vest it in other property with the consent of those to be benefited by said trust, they were authorized so to do.

It appeared from the evidence·that the trustees did sell the land in different parcels to the amount of $3371.83, and received the money. That after it was so obtained, the trustees authorized the investment of that money in a store at Farrandsville in this state. The wife of Edwin had died before this transaction, and the plaintiffs were the only children. That after the store had been held a short time, about a year or more, it was sold out by the consent of the trustees; and they intrusted the money to Edwin Tyler, to be invested by him in the purchase of stock in this institution. Edwin Tyler attended the sale of stock, and purchased 130 shares of stock, and the certificates were issued in his name.

During the trial, the plaintiff offered evidence to prove the declarations of Edwin Tyler, that the stock was purchased with the funds of the plaintiffs, and that he held the stock as a trustee for them. The defendant objected to the evidence, but the court overruled the objection and sealed a bill of exception.

The plaintiff offered to show that the cashier of the Harrisburg Bank, after the purchase of the stock, told the witness, while in the bank, that he knew that the stock belonged to the children of Edwin Tyler; this after the death of Edwin Tyler. To this the defendant objected, on the ground that the cashier is the mere agent of the bank, and when in the making of any contract, his declarations are evidence—but when not engaged in making contracts, or transacting any particular business, his declarations are not evidence against his principal. The court overruled the objection and admitted the evidence, and the defendant excepted.

Proof was made of the demand at the bank to permit the transfer of the stock to be made, and of the refusal of the bank to permit it, on the ground of Edwin Tyler's indebtedness to the bank, they claiming to hold the stock as security for the debt. It was also proved that it was the practice of the bank, that notes were discounted by the cashier, without the agency of the board of directors.

The court below (Parsons, President) thus instructed the jury:

"If the jury believe that the money arising from the sale of this land, the same identical money, was vested in the purchase of the store at Farrandsville, by the trustees, then it would have been the property of these children; and should you be further satisfied that the same money which was received from the proceeds of the store was used in payment for these shares of the stock by Edwin Tyler, under the direction of the trustees, then the stock would belong to the plaintiffs, the children of the said Tyler. To preserve trust money, it is requisite that the same should be preserved in its own original form, and must retain its

distinctive character. It must be the same fund that was the operation of the trust, and vested in the trustees. It must not be changed, it must not be mingled with the other money of the trustees, nor that of their agent, or the money of a stranger. Then, if you are convinced that the same money preserved distinct and separate, that was received from the sale of the land, was invested in the store; and the same money-received from the sale of the store, was used by E. Tyler, in the purchase of these shares of stock, now the subject of dispute, your verdict ought to be in favour of the plaintiffs for the value of this stock. On the other hand, if you should believe that this money was mingled with the other property of the trustees, or that of Edwin Tyler, and its original distinctive character was lost, then the claim of these minors, and their right to pursue it to the exclusion of a third person, who had purchased it, or in another form had a legal claim upon it, is gone, and they cannot demand it. So if the jury should believe that when Edwin Tyler paid for this stock, he paid for it with other funds than this trust fund; if he paid for it with his own money, drew upon his own resources, and with that paid for this stock, then the law would rule this cause against the plaintiffs, and your verdict should be in favour of the defendant. The law gives the bank the right to resist the transfer of this stock till the debt is paid."

The errors assigned were in admitting in evidence the declarations of Edwin Tyler, and those of the cashier of the bank, and in the instructions which the court gave the jury.

*Herman Alricks* and *Roberts*, for plaintiff in error. The declarations of E. Tyler should not have been received in evidence for himself and his children. All his interests were against the bank. If he were living, and competent, he must be sworn; his death will not make his declarations evidence. 7 *Serg. & Rawle* 109; 15 *Serg. & Rawle* 231; 2 *Watts* 406; 3 *Serg. & Rawle* 9. The declarations of the cashier, when not engaged in the business of the bank, are not evidence. *Story Ag.* 25; 6 *Watts* 489; 11 *Serg. & Rawle* 267, 179.

The bank, with regard to this stock, stood in the light of a *bonâ fide* purchaser without notice, whose rights should be protected. But in order to enable a *cestui que trust* to follow the fund, it must clearly appear that it has not been mixed with those of the trustee. 2 *Dall.* 67; 10 *Johns.* 63; 2 *Wash. C. C.* 212; 2 *Story Eq.* 503.

*Adams* and *M'Clure*, for defendant in error, as to the declarations of E. Tyler being evidence, cited 3 *Rawle* 437; 1 *Watts & Serg.* 248; 11 *Eng. Com. Law* 349: 19 *Eng. Com. Law* 487; *Gres. Eq. Ev.* 221; 10 *East* 109; 2 *Penn. Rep.* 346; 12 *Johns.* 343; 4 *Johns. Chan.* 136. As to the declarations of the cashier, 8 *Wheat.* 360; 3 *Mason* 506; 8 *Watts* 17; 10 *Watts* 397; 1 *Devereux* 484.

Whether the fund was clearly traced, was a matter of fact which was left to the jury.

The opinion of the Court was delivered by

GIBSON, C. J.—Edwin Tyler's account of the funds put into his hands for investment by the surviving trustee, was admissible evidence for a very sufficient reason—it was in prejudice of his interest. Had he purchased the stock with his own money, he would have owned it in perpetuity, instead of owning the produce of it during his lifetime. He declared that he had purchased it with the proceeds of the Farrandsville store for the benefit of the trust; and, at his death, his declaration became evidence of the fact as the confession of a man peculiarly, if not exclusively, cognizant of it, whose sacrifice, by the narration, is an equivalent for his oath. In *Gressley's Eq. Ev.* 222, the confession of a trust is put as a familiar instance of hearsay evidence, in which such a sacrifice is held to be a sufficient guaranty of the narrator's truth.

The declaration of Mr Walters, the cashier, was competent on another ground. The Act of Incorporation pledges a borrower's stock for his discounts; and it was necessary to affect the bank with notice that these shares, standing as they did in the name of Edwin Tyler, were not his exclusive property when his note was discounted, in order to prevent the bank from acquiring an interest in them beyond his beneficial ownership. The declaration of the cashier showed that this knowledge was in his possession; but though it is the duty of that officer *to disclose to the* directors his knowledge of a security offered for a loan, and the presumption is that he did so in this instance, yet the difficulty is to determine whether his declaration that the stock belonged to the children, is to be taken for the act of any one but himself. The relation which he bore in the transaction, was that of an agent, and depends for its extent on the constitution of the bank, and the course of its business. Thus, in *Fleckner* v. *The Bank of the United States*, (8 *Wheat.* 338), it is said the cashier is the general executive officer in checking for money deposited; delivering up discounted notes and other property; receiving money, and taking care of the cash, notes, and bills; conducting the whole pecuniary operations in paying or receiving debts, and in discharging or transferring securities; and it may be added that he is, by necessary practice, the agent of the bank to manage its concerns in all things not peculiarly committed to the directors by the charter. In *The Bank of Pennsylvania* v. *Reed*, (1 *Watts & Serg.* 106), we held that a cashier has a general authority to superintend the collection of notes under protest; to make agreements of compromise, when necessary; and, in short, to do anything which any other agent may do within the scope of his business. The extent of the cashier's authority in this instance, therefore, is

to be measured by the duties assigned to him; and it is proved that he was allowed to discount notes—a function which involved a greater extent of power than is necessary to effect a transfer of dividends or stock. It was testified even that the discount from which the claim of the bank to these shares arises, was made by him instead of the board; and his knowledge at the time of the transaction, was therefore emphatically the knowledge of the board whose function he was authorized to perform. But on one of the two occasions mentioned by the witness, it is doubtful whether the declaration was made in the discharge of a duty. The surviving trustee testified that he was told at the bank, some time after Edwin's death, that the shares were the property of the children. It may not have been the cashier's business to converse on such topics; but the trustee testified that the cashier subsequently proposed to pay, on the security of his receipt, dividends admitted by him to be due to the children for these shares; and that the money was accordingly put to their stepmother's credit for their use. As, then, these demands would have belonged to their father's creditors, if the children had not had an interest paramount to his title, the Act itself was not only an admission of their right, but conclusive evidence that the bank had notice of it; and if the cashier supposed the stock to be their property at the time of the discount, there is no room to infer that the money was advanced on the credit of it as a security. The admission of the children's ownership on another occasion, but to the same witness, neither added to, nor took from, the evidence of such a belief; and on the principle of those decisions by which the reception of incompetent evidence has been helped by conclusive proof of the fact, the case stood as fair for the bank on the whole evidence, as if the questionable part had been struck out of it. The error, then, if there was one, was without prejudice.

Instead of examining the exceptions to the charge in detail, it is preferable to dispose of them by inquiring whether the trust fund might be traced through the store at Farrandsville specifically to this stock; and whether there was in fact evidence that the identical money had been invested in it.

In regard to the first, it is well settled that a trust will be enforced not only against those who are rightfully possessed of the fund as trustees, but also against all others who have obtained it without consideration or with notice of the trust. (*Story's Eq. Juris.* ch. 9, § 533). In *Taylor* v. *Plumer*, (3 *M. & S.* 570), Lord Ellenborough held, that the interest of the *cestui que trust* shall not suffer by a change in the form of the fund, whether it were made in performance of the trustee's duty or in violation of it, because an abuse of the trust can neither give nor take away a right; and those who claim by it as volunteers or with notice, stand on a level with the delinquent trustee. Thus in *Burdett* v.

III.— 48   2 g *

*Willet*, (2 *Vern*. 638), a debt created by a factor who had sold his principal's goods and died before the expiration of the credit, was decreed to be paid to the principal, and not to the factor's specialty creditors; because, though a factor has the right at law, he is in equity but a trustee.

That case assumes that trust money may be followed whenever it can be identified, notwithstanding the obsolete remark of Lord King in *Deg* v. *Deg*, (2 *P. Wms.* 414), that it has no earmark. It is true that coin, or currency of which possession is the index of ownership, cannot be followed into the hands of a *bonâ fide* receiver of it for value; not, however, because it has no earmark, but because the convenience of trade does not allow such transactions to be unravelled. But equity looks to the manner in which a trustee has disposed of the fund, and pursues it into the hands of any one who has received it *malâ fide*—in other words, with notice of the trust. A long list of cases might be given for this; but I particularize *Chedworth* v. *Edwards*, (8 *Vez.* 46), because the subject of it was a stock transaction, and the steward who had invested his master's money in his own name was restrained from transferring the shares. Cases of land purchased with trust money are still more numerous, and I refer to *Lench* v. *Lench*, (10 *Vez*, 517), in which Sir William Grant said, that whatever doubt may have formerly been entertained, it is now settled that trust money may be followed into land, and the claim established by parol evidence.

Was there, then, evidence to be left to the jury, that the trust fund had been vested specifically in this stock? The land in Connecticut was sold under a power in the deed, and the price of it invested as capital in a store at Farrandsville, which was managed for the trust by Edwin Tyler, but sold by the surviving trustee after a year of successful business. The profits were given to Edwin for his own use, but the capital was put into his hands with instructions to invest it in the stock of this bank for the benefit of the trust; and that he did so, is in evidence by his own declaration, while it is shown by the cashier's declaration that the bank was aware of the extent of his interest. The evidence therefore was properly left to the jury, with a direction to find for the plaintiff, if it proved that the money with which the stock was bought, was the identical price of the store. The process of perpetual transmutation to which the fund was subjected while it was employed in trade, was immaterial: the price of the store was taken to be the property of the trust by all the parties in interest, and no one else had a right to object. Whether the bank was aware of the interest of the children at the point of time when it discounted the draft, was not made a question at the trial, though there was conflicting evidence on the subject of it; and if there was error in respect to it, the court is not responsible for it. It is unimportant that there may not have been evidence to raise

the question submitted by the court, whether the shares were purchased with the proceeds of notes given for the Farrandsville store and discounted at the bank. Such a transaction would point out the fund; yet the question was not whether the price of the store had come into the capital of the bank through a particular channel, but whether it had come into it at all. It is not clear, however, that the question was put without evidence; for it was in proof that Edwin Tyler had discounted a note drawn by Ogden E. Edwards, the purchaser of the store. Neither was the liability of the stock to execution creditors, the test of its liability to the bank. In regard to them, not being purchasers, the question of notice would be an irrelevant one, though it would be otherwise in regard to a purchaser at their sale; and had the bank been put on the footing of an execution creditor, it would not have had a leg to stand on. We cannot perceive a ground, then, on which the assignment of errors can be sustained.

Judgment affirmed.