Rudisill, Appellant, *v.* Cordes.

Argued January 17-18, 1939. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John D. Keith,* with him *Franklin R. Bigham,* of *Keith & Bigham,* and *Daniel E. Teeter,* for appellant.

*Thomas Raeburn White,* with him *Eugene V. Bulleit, Hamilton Page, Wayland H. Elsbree* and *White & Staples,* for appellee.

OPINION BY MR. JUSTICE MAXEY, March 22, 1939:

Plaintiff, Lottie K. Rudisill, brought an action in trespass for the death of her husband, John Z. Rudisill, alleged to have been caused by the negligence of defendant in operating an automobile. The case was tried and a verdict for defendant returned. A motion for a new trial being refused, this appeal followed.

The accident occurred on the morning of February 5, 1936, in Adams County, on the state highway. The surface of the highway at the scene of the accident and for several miles south of it was entirely covered with a coating of ice a quarter of an inch thick. The deceased, a mail carrier, was proceeding northward along the highway in the performance of his duties. He stopped his car on the eastern side of the roadway in front of Samuel Young's property but slightly north of Young's mail box. The right wheels of his car were between six inches and a foot away from a snow bank which lined the eastern side of the roadway. The distance between this bank and the one on the opposite side of the road was about fourteen feet. After stopping his car, the deceased alighted from the left side of it and, holding to its side, proceeded slowly toward the rear in the direction needed to reach the mail box. When near the rear of his car, he was struck by the skidding automobile driven by defendant and received fatal injuries. Defendant first observed the deceased's car when he was "about two city blocks away" from it. He did not notice the deceased standing upon the highway or moving along the parked car until he was about 75 feet away, and he continued to drive forward at about ten or fifteen miles per hour.

After he attempted to turn toward the western side of the highway to avoid the deceased and the parked car, his car skidded and his right front fender struck the deceased and he lost entire control of his car. Upon the trial the defendant offered to prove as part of the res gestæ that the deceased had stated while still at the car and immediately after taken into the Young house that "accidents will happen, this man could not help it." The evidence offered was objected to as "hearsay" and as "a matter of opinion." The objection was overruled. The court refused to strike out this testimony. It later developed from the examination and cross-examination of witnesses that no such statement had been made by the injured man *while at the car,* but was made ten or fifteen minutes later, after the victim had been carried into the Young house and after he requested those in attendance to notify the postmaster at Littlestown of the accident in order that the undelivered mail could be taken care of.

The court below in its opinion refusing a new trial said: "No testimony whatever was produced to show that any statement was made at the car or prior to the decedent's being carried into the house. The offer was objected to as hearsay evidence . . . ; that it was not a dying declaration; that statements of the decedent would be inadmissible in an action brought by his widow; that the alleged declaration is a matter of opinion and not of facts. . . . The question thus presented is not free from difficulty. Unquestionably, admission in evidence of a statement by the decedent that the person causing his injury was not at fault would be prejudicial to the plaintiff, and if the admission of that testimony were improper, a new trial must be granted." The court stated further: "The declaration of the decedent was a declaration against his interest and an admission on his part that the defendant was without fault and, as such, would be admissible even though not a part of the res gestæ. . . . The most serious objection to the admission of the declaration in this case is that the dec-

laration was a statement of a conclusion or of the opinion of the declarant and is not a statement of fact." The court ruled that this objection is not valid against a declaration against interest and asks: "Would the evidence alleged to be kerneled in the declaration be admissible if, at the trial, the declarant assumed a contrary position? If so, it should also be admissible where the contrary position is assumed by those bringing the action in succession to or substitution for his action: *Hughes v. Delaware and Hudson Canal Company,* 176 Pa. 254, 260 [35 A. 190]."

Appellant cites in support of her contention the language of this court in *Com. v. Fugmann,* 330 Pa. 4, 198 A. 99, where we declared *in*admissible as a res gestæ declaration a statement made by the deceased in that case immediately after a fatal explosion because we held that "the evidence alleged to be kerneled in the declaration would not have been competent if the declarant was on the stand to make the declaration under oath." There the declaration, "Fugmann done this," was palpably based on *conjecture* and not on perception. In the instant case, the declaration of the victim of the accident was just as palpably not based on conjecture but was a mental conclusion based on *what his senses had just perceived.* The statement: "Accidents will happen; this man could not help it," was not a mere surmise as was Fugmann's statement in the case cited. It was a characterization of the occurrence in which the declarant, Rudisill, had just participated as victim. Having perceived it in all its phases, he characterized it as an accident not due to the man whose car had struck his. The characterization was based on his own observation then and there, and not, as in the Fugmann case, on something which had been in the mind of the then victim, Maloney, before the bomb exploded. Maloney's declaration was clearly *not* based on the perception of his senses at the time or immediately before the fatal happening. Rudisill's declaration had all its rootholds in the occur-

rence; Maloney's declaration had *none* of its rootholds in the occurrence. This difference in their origins makes a vast difference in the relative probative values of the declarations in question. Wigmore has said: "The conclusions and tests of everyday experience must constantly control the standards of legal logic": 1 Wigmore on Evidence (Revised ed.), p. 232. Thayer in his Preliminary Treatise on Evidence, page 271, says: "The whole process of legal argumentation and the rules for it . . . are mainly an affair of logic and general experience, not of legal precept. . . . In dealing with litigation courts are not engaged in an academic exercise. . . . Their main business [is] that of awarding justice. . . . [p. 272]: What is called the legal mind is still the human mind, and it must reason according to the laws of its constitution." The foregoing principles do not mean that judges do not have to decide first "whether a particular fact is fit to be considered."*

In their functions as preliminary testers of evidence, the courts have admitted "through the evidentiary portal" certain statements which are called "hearsay" because they are not made in court under the sanctity of an oath. Included in this general category of "hearsay evidence" are "res gestæ declarations," "dying declarations," and "declarations against interest." When the

---

· * "While the historian or the naturalist may as he pleases set aside and preserve data of the slightest helpfulness, or may pass judgment upon his facts immediately and finally, the legal tribunal is, with us, divided in function; the judge passes first upon the evidence and sets aside the tidbits for the jury; that which is not worth considering, for one reason or another affecting its value, never reaches the auxiliary functionaries, the jurors. . . . The judge, in his efforts to prevent the jury from being satisfied by matters of slight value, capable of being exaggerated by prejudice and hasty reasoning, has constantly seen fit to exclude matter which does not rise to a clearly sufficient degree of value. In other words, legal relevancy denotes, first of all, *something more than a minimum of probative value.* Each piece of evidence must have a plus value": Wigmore on Evidence, Vol. 1 (2d ed.), pp. 233-34.

trial judge correctly places any of these labels on "hearsay" testimony offered, the evidence becomes admissible. The labels are but *badges* of admissibility; the evidence is admissible because of its prima facie *probative* value, and is therefore worth considering by the jury, its credibility and weight in effecting persuasion are always for the jury's determination. As to dying and res gestæ declarations, we said in *Com. v. Fugmann* (supra), that "the solemnity attendant upon the one and the spontaneity of the other are mere avouchments of sincerity." In other words, the attendant "solemnity" and "spontaneity" referred to are in the trial of cases accepted as substitutes for the oath required of a witness in court, as a sanction for the receipt of his statements in evidence. Certain "hearsay" statements must be adjudged worthy to bear the above labels before they can be sanctioned as evidence. Likewise, "hearsay" declarations which are "against the interest of the declarant" are admissible on "the principle of experience that a statement asserting a fact distinctly against one's interest is unlikely to be deliberately false or heedlessly incorrect, and is thus officially sanctioned, though oath and cross-examination are wanting": Wigmore on Evidence, Vol. 3 (2d ed.), sec. 1457, p. 191. In *Addams v. Seitzinger*, 1 W. & S. 243, Chief Justice Gibson referred to the admissibility of declarations against interest as based on "the principle which allows entries or memorandums, which were prejudicial to the interest of the writer . . . to be evidence . . . thus substituting for the sanction of a judicial oath, the more powerful sanction of a sacrifice of self-interest."

The trial judge in the instant case correctly concluded that the victim's declaration that the defendant was not to blame for the accident possessed sufficient probative value to be worthy of the jury's consideration. It was a declaration relevant to the pivotal fact in issue and made by a man who had every reason to "know what he was talking about," and since it was a declaration in dis-

paragement of his own interest, i. e., against his right, had he survived, to recover damages against the defendant, the sacrifice of self-interest can be logically accounted for only on the theory that the declarant was motivated by a desire to speak the truth and did so. This sacrifice of self-interest was in the eyes of the law an adequate substitute for the sanction of a judicial oath and gave to the evidence, which was competent in substance, a passport of admissibility. It did not require the passport of "res gestæ."

The circumstance which made the evidence competent in substance was that the victim's declaration of the defendant's nonliability for the accident was in plain contradiction to the claim of liability made by the victim's widow in the action tried. Whatever rights she, the plaintiff, had in that suit were only in succession or substitution for his. She brought the action *he* could have brought had he survived and for precisely the same cause. See *Birch v. Pittsburgh R. R. Co.*, 165 Pa. 339, 30 A. 826, and *Hughes v. D. & H. Canal Co.*, supra. Since the suit itself was an assertion of defendant's liability and since the plaintiff in order to go to the jury had to make out a prima facie case of negligence against the defendant, the declaration of the defendant's nonliability, made by the man whose fatal injuries gave rise to the action, a declaration going to the very heart of the cause of action, was clearly admissible. In *Mullen v. Ins. Co.*, 182 Pa. 150, 37 A. 988, this court said: "Any act or omission of the plaintiff inconsistent with his claim or with the testimony submitted to sustain it was pertinent to the issue, and therefore admissible." In the instant case, the "act" which was "inconsistent with the claim" was not the "act" of the plaintiff but of the man from whom plaintiff derived whatever rights in the matter she had, and this act or declaration, which was so utterly at variance with the claim made, was admissible in evidence. Wigmore in Vol. 2, page 491 et seq. of his Second Edition of Evidence, discusses at length the admissibility of

evidence of acts or declarations which serve to prove an inconsistency in positions assumed or statements made in respect to actions at law and he says that "this inconsistency is to be determined, not by individual words or phrases alone, but by the *whole impression or effect* of what has been said or done." He also says (p. 495) that "some courts [hold] that the declaration should be excluded because it is mere opinion. This is unsound, (1) because the declaration is not offered as testimony, and therefore the Opinion Rule has no application, and (2) because the declaration in its opinion-aspect is not concerned, and is of importance only so far as it contains by implication some contradictory assertion of fact. In short, the only proper inquiry can be, Is there within the broad statement of opinion on the general question some implied assertion of fact inconsistent with the other assertion made on the stand? If there is, it ought to be received, whether or not it is clothed in or associated with an expression of opinion."

Cases illustrative of the principle that proof of previously made statements of opinions or conclusions at variance with the same party's claim or evidence in court is receivable in evidence, are as follows: In *Shinkle v. McCullough,* 77 S. W. 196 (Court of Appeals of Kentucky), a chauffeur's previous statement that "he considered himself responsible for the accident" was admitted as tending to contradict his disclaimer of liability at the trial. In *Whipple v. Rich et al.,* 180 Mass. 477, 63 N. E. 5, it was permitted to be shown that a witness who had testified in court that there was nothing to obstruct the view of a driver of a car involved in an accident, had previously declared that the driver was "not to blame." In *Franklin v. Com.,* 105 Ky. 237, 48 S. W. 986, where a witness had testified to the defendant's planning of the crime, it was permitted to be shown that he had previously said that he knew that defendant had nothing to do with it. In *Pindell v. Rubenstein,* 139 Md. 567, 115 A. 859, it was permitted to be shown that a

witness whose testimony tended to shift liability for an accident onto the defendant had previously stated to the defendant, "it is not your fault."

While it is true that in most of the cases where testimony is admissible for purposes of contradiction, the latter relates to the sworn testimony of a *witness*, the principle underlying these contradictions is applicable to the case at bar. In the latter case the statement of the victim was not put in evidence to contradict any statement made by anybody on the witness stand but was received to contradict the claim of plaintiff which was implicit in her pleading and attempted proof of her cause of action. In *Liebster v. Lucas*, 82 Pa. Superior Ct. 184, it was held that it was error to exclude an offer by the plaintiff to prove that within a half hour after the accident, defendant admitted that he was driving while under the influence of liquor, and it was his fault that the accident occurred, and that he would make good any damages. In *Eldredge v. Barton*, 122 N. E. 272 (Mass.), the defendant offered to show that soon after plaintiff's decedent was injured, he said: "It is my fault; I am to blame." It was held that this statement was admissible as an assertion by the decedent that the accident was due to his own lack of care; "which is inconsistent with and tends to discredit the present allegation made by his administrator, that he was then in the exercise of due care; and hence it was competent as being in the nature of an admission. The fact that the admission was against the interest of the intestate adds to its weight."

The learned President Judge of the court below, aptly said: "Of course, the declaration [of Rudisill, the deceased] was not binding upon the plaintiff if she could show that the defendant was, in fact, at fault. Upon reflection and consideration the declarant himself might have changed his mind and instituted suit: *Dennison v. Miner*, 17 W. N. C. 561. But the declaration was evidence which the jury should have been allowed to consider along with all the other evidence in the case."

The declaration in question was competent in substance; though it was "hearsay," it was admissible because it was a declaration against interest; and it was received for a proper legal purpose, to wit, the contradiction or negation of plaintiff's assertion of a cause of action against the defendant.

The judgment is affirmed.