Commonwealth, Appellant, v. Antonini.

Argued October 7, 1949. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent).

502

*John C. Phillips,* Deputy Attorney General, with him *Raymond V. John,* Assistant District Attorney, *John H. Maurer,* District Attorney and *T. McKeen Chidsey,* Attorney General, for appellant.

*Edward W. Furia,* with him *Vito F. Canuso,* for appellee.

OPINION BY ARNOLD, J., November 15, 1949:

Defendant-appellee, an employe of the City of Philadelphia, was charged in three indictments with making false and untrue entries in the tax ledger of the City as to the amusement taxes paid to the receiver of taxes, for the years 1945, 1946 and 1947.[1]

The evidence showed that the defendant, for each year, certified on the ledger of the receiver of taxes that a stated amount of amusement taxes was received and paid to the city treasurer. The amount thus certified was much less than that actually received, and the difference was apparently embezzled by employes of that office. The Commonwealth contended that the embezzlements would have been prevented or promptly discovered if the defendant had certified the true amounts.

The jury found the defendant guilty. The court en banc, one judge dissenting, granted a new trial, certifying that it did so "solely on the question of law raised by the admission [on behalf of the Commonwealth] . . . of Commonwealth's Exhibit No. 1." This exhibit was the so-called suicide note of one Foss, who was

---

[1] Under §846 of The Penal Code of 1939, 18 PS §4846.

head of the amusement tax department in the office of the receiver of taxes.

Because of the importance of this case and those related to it, and the fact that the Department of Justice of the Commonwealth conducted the prior investigation, participated in the trial, and argued this appeal, and since defense counsel concurs, we will not discuss the right of the Commonwealth to appeal, and follow literally *Commonwealth v. Simpson,* 310 Pa. 380, 383, 165 A. 498.

Following investigation of suspected embezzlements, Foss, an employe of the receiver of taxes, committed suicide on May 22, 1948, leaving a note in his handwriting, signed by him, and dated the same day. Without reference to his death or contemplated suicide, he stated therein that he had received three-fifths of the money embezzled from the amusement tax department, and that this was divided equally between him, one Block, and the instant defendant.

The defendant was charged with falsifying the books of the City *with intent to defraud.* The Commonwealth contends that the declaration of Foss that defendant participated in the fruits of the embezzlements, furnished evidence of his motive and fraudulent intent in falsifying the books. Stated in another way, the declaration was offered as substantive proof that the defendant participated in the embezzlements, and therefore falsified the books to escape detection.

The declaration of Foss was hearsay and inadmissible unless under some exception to the hearsay rule.

The evidence was not admissible as a declaration of a co-conspirator, because on the face of the note any conspiracy was at an end, its purpose had been accomplished, and the money divided. Where the declaration of a co-conspirator is made after the termination of the common purpose, it is not rendered admissible merely because the declarant is dead.

It was not admissible as a dying declaration, for, whether logically or not, dying declarations are received in evidence *only when made by the victim of a homicide* for which the defendant is on trial.[2]

When the declaration in the instant case was offered, no statement of the legal purpose was made, but appellant now contends that the note was admissible "as against the interest of the declarant."

Actually, the written declaration of Foss was simply his confession of criminality in which he implicated others, including the instant defendant. Its characteristics are not changed by labelling it "a declaration against interest." All confessions (and usually all declarations of a co-conspirator) are against the declarant's interest. While Foss' declaration might impose liability on him or his estate for the money which he illegally took, it is also true that nearly all crimes, confessed to, impose as well a civil liability on the perpetrator.

The instant case is ruled by *Commonwealth v. Epps,* 298 Pa. 377, 148 A. 523, where the defendant was tried for murder. Two other persons had previously been convicted of felonious homicide in the same killing. The confessions of the two other persons implicating Epps were placed before the jury. The Supreme Court stated, page 380: "This was grossly violative of the rights of the accused . . . 'A confession is evidence only against the person who made it, and will not be admitted to affect others who participated in the crime . . .': Henry's Pennsylvania Trial Evidence, section 121; . . .

---

[2] At common law a death resulting from an abortion was homicide. When our statute made it a specific statutory offense, not homicide, the dying declaration of the victim was not admissible in evidence: *Commonwealth v. Railing,* 16 W. N. C. 452. This remained the law until the Act of 1895, P. L. 387, 19 PS §583, which made such declaration by the victim admissible: *Commonwealth v. Winkelman,* 12 Pa. Superior Ct. 497.

Fife v. Com., 29 Pa. 429; Com. v. Aston, 227 Pa. 112; 16 C. J. 659; Com. v. Ballon, 229 Pa. 323. 'The statements of a coparty . . . are not usable as admissions against a coparty. . . . This principle is particularly illustrated by the rule in regard to the admissions of a codefendant in a criminal case; here it has always been conceded that the admission of one is receivable against himself only [where the common enterprise is at an end]' . . . Wharton's Criminal Evidence, 10th ed., page 1435-6; Heine v. Com., 91 Pa. 145; . . . Com. v. Zuern, 16 Pa. Superior Ct. 588." See also Wigmore on Evidence, 3rd ed., Vol. 4, §1076, at page 116; *Commonwealth v. Sendrow,* 119 Pa. Superior Ct. 603, 606, 181 A. 450; *Commonwealth v. Martin,* 124 Pa. Superior Ct. 293, 299, 300, 188 A. 407; 20 Am. Jur.—Evidence—§493.[3]

In *Yentis v. Mills,* 299 Pa. 25, 31, 148 A. 909, it was stated: "It is true that, under some circumstances, declarations of a decedent against interest, though hearsay, may be proven in later litigation . . . [citing cases]. Like statements affecting title, and tending to defeat that of the declarant, are received; but only as against his grantees, privies, or heirs, as in Gibblehouse v. Stong, 3 Rawle 437; Frazier v. Foreman, 269 Pa. 13." *Rudisill v. Cordes,* 333 Pa. 544, 5 A. 2d 217, in effect, followed this rule. There a widow sued to recover damages for the death of her husband in an automobile accident. On

---

[3] In cases where a defendant is on trial charged with aiding and abetting a crime committed by A, the confession or declaration of A, be he living or dead, that he committed the principal crime, is evidence against the aider and abettor *only to show the commission of the crime by the principal.* If the declaration or confession of the principal implicates the aider and abettor, it must be separated from the declaration if possible. If not possible it may all go in, but for the limited purpose of proving that the principal committed the crime, and the jury must be instructed *that it is not evidence of defendant's guilt* in aiding or abetting the principal. See Wigmore on Evidence, 3rd ed., Vol. 4, §1079(c); *State v. Mann,* 39 Wash. 144. 81 Pac. 561, 564; *State v. Lyda,* 129 Wash. 298, 225 Pac. 55.

behalf of the defendant there was properly admitted the declaration of the deceased that "accidents will happen; this man [the defendant] could not help it." The widow stood in the same right as her deceased husband, and if he could not have recovered had he lived, she could not recover.

In *Frazier v. Foreman*, 269 Pa. 13, 111 A. 923, citizens of Pittsburgh created a fund for the purpose of purchasing a home for a widow and her children. The widow declared when she received the money that it was for the benefit of her and her children. She purchased a dwelling with the money. She later remarried, and after her death her second husband brought an action against the children for his right of curtesy. Her declaration against interest that the home (standing in her name alone) belonged to the children as well as to her, was admissible against the husband, because he claimed by privity with her.

In *Donnelly v. U. S.*, 228 U. S. 243, 57 L. Ed. 820, a defendant charged with murder offered in evidence the confession of one Joe Dick, who was deceased, that the declarant had killed the person with whose homicide the defendant was charged. The trial court rejected the offer as hearsay, stating, page 833: "One of the exceptions to the rule excluding it [hearsay] is that which permits the reception, under certain circumstances and for limited purposes, of declarations of third parties, made contrary to their own interest; but it is almost universally held that this must be an interest of a pecuniary character; and the fact that the declaration alleged to have been thus extrajudicially made would probably subject the declarant to a criminal liability is held not to be sufficient to constitute it an exception to the rule. . . ." In the *Donnelly* case the declaration of Dick that he murdered the deceased would certainly subject Dick to civil liability as well, and was in that sense against his pecuniary interest. In the instant case, too, the declaration of Foss that he received part of

the fruits of embezzlements was against his penal interest, even though it would subject the declarant to civil liability. Since the confession of Dick was not admissible to exculpate the accused, a fortiori it would not have been admissible to inculpate. Justice HOLMES dissented in the *Donnelly* case, and he was joined by Justice LURTON and Justice HUGHES. Professor Wigmore severely criticises the majority opinion, and states that the HOLMES dissent represents what the law is or ought to be, i. e., that a declaration against *penal* interest only is admissible. But neither Justice HOLMES in his dissent, nor Professor Wigmore in his treatise, ever contended that such declaration against interest, to wit, a confession, by a party deceased, could be received in evidence to *inculpate* another.

In a criminal trial a statement by another that he and the defendant participated in a criminal act is not rendered admissible against the defendant merely because the declaration was against the interest of the declarant; and it cannot be received in evidence, either to show motive and intent of the defendant to commit the crime charged, or to inculpate him in either crime;— and this regardless of whether the declarant be living or dead.

The order of court granting a new trial is affirmed.