Commonwealth *v.* Nash, Appellant.
Commonwealth *v.* Robinson, Appellant.

Argued April 23, 1974.   Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

*Neil E. Jokelson,* with him *Mitchell S. Lipschutz,* for Nash, appellant.

*Andrea Levin,* Assistant Defender, with him *John W. Packel,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for Robinson, appellant.

*Albert L. Becker,* Assistant District Attorney, with him *David Richman,* Assistant District Attorney, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, July 1, 1974:

On February 4, 1972, appellants, Alfred Nash and James Robinson, were tried together in the Court of Common Pleas of Philadelphia County, with Nash being convicted of aggravated robbery, aggravated assault and battery and carrying a concealed weapon. Robinson was convicted of aggravated robbery. All charges arose out of the robbery of a bread truck. Post-trial motions were denied and appellants appealed to the Superior Court, which affirmed the judgments of sentence. We granted allocatur to discuss whether the trial judge erred when he prohibited appellants

from offering testimony through a witness that a third party had admitted to her that he had committed the crimes for which appellants were being tried.

At appellants' trial, the defense called one Willis Daniels, who was alleged to have admitted that he committed the robbery for which appellants were being tried. Daniels asserted his Fifth Amendment privilege. The defense then called one Renee Edwards, a girlfriend of appellant Robinson, who was to testify to the alleged out-of-court admission by Daniels. The Commonwealth objected and requested an offer of proof. Defense counsel stated that Miss Edwards would testify to an admission from a third party. The Commonwealth then objected on the grounds that such testimony would be inadmissible hearsay, which objection was sustained.

In support of their contention that Miss Edwards' testimony should have been admitted, appellants cite *Chambers v. State of Mississippi*, 410 U.S. 284, 93 S. Ct. 1038 (1973), and *Commonwealth v. Hackett*, 225 Pa. Superior Ct. 22, 307 A.2d 334 (1973).

In *Chambers, supra,* the Supreme Court of the United States discussed this issue at length, stating at 299-302, 93 S. Ct. at 1048-1049: "This materialistic limitation on the declaration-against-interest hearsay exception appears to be accepted by most States in their criminal trial processes, . . . although a number of States have discarded it. . . . Declarations against penal interest have also been excluded in federal courts under the authority of Donnelly v. United States, 228 U.S. 243, 272-273, 33 S. Ct. 449, 459, 57 L.Ed. 820 (1913), although exclusion would not be required under the newly proposed Federal Rules of Evidence. . . . Exclusion, where the limitation prevails, is usually premised on the view that admission would lead to the frequent presentation of perjured testimony to the jury. It is believed that confessions of criminal activity are often motivated by

extraneous considerations and, therefore, are not as inherently reliable as statements against pecuniary or proprietary interest. While that rationale has been the subject of considerable scholarly criticism, . . . we need not decide in this case whether, under other circumstances, it might serve some valid state purpose by excluding untruthworthy testimony.

"The hearsay statements involved in this case were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability. First, each of McDonald's confessions was made spontaneously to a close acquaintance shortly after the murder had occurred. Second, each one was corroborated by some other evidence in the case— McDonald's sworn confession, the testimony of an eyewitness to the shooting, the testimony that McDonald was seen with a gun immediately after the shooting, and proof of his prior ownership of a .22-caliber revolver and subsequent purchase of a new weapon. The sheer number of independent confessions provided additional corroboration for each. Third, whatever may be the parameters of the penal-interest rationale, . . . each confession here was in a very real sense self-incriminatory and unquestionably against interest. See United States v. Harris, 403 U.S. 573, 584, 91 S. Ct. 2075, 2082, 29 L.Ed.2d 723 (1971); Dutton v. Evans, 400 U.S. 74, 89, 91 S. Ct. 210, 219, 27 L.Ed.2d 213 (1970). McDonald stood to benefit nothing by disclosing his role in the shooting to any of three friends and he must have been aware of the possibility that disclosure would lead to criminal prosecution. Indeed, after telling Turner of his involvement, he subsequently urged Turner not to 'mess him up.' Finally, if there was any question about the truthfulness of the extrajudicial statements, McDonald was present in the courtroom and had been under oath. He could have been cross-examined by the State, and his demeanor and

responses weighed by the jury. See California v. Green, 399 U.S. 149, 90 S. Ct. 1930, 26 L.Ed.2d 489 (1970). The availability of McDonald significantly distinguishes this case from the prior Mississippi precedent, Brown v. State [99 Miss. 719, 55 So. 961 (1911)], and from the Donnelly-type situation, since in both cases the declarant was unavailable at the time of trial.[21]

". . . Few rights are more fundamental than that of an accused to present witnesses in his own defense. E.g., Webb v. Texas, 409 U.S. 95, 93 S. Ct. 351, 34 L.Ed.2d 330 (1972); Washington v. Texas, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L.Ed.2d 1019 (1967); In re Oliver [333 U.S. 257, 273, 68 S. Ct. 499, 507, 92 L.Ed. 682 (1948)]. In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow

[21] McDonald's presence also deprives the State's argument for retention of the penal-interest rule of much of its force. In claiming that '[t]o change the rule would work a travesty of justice,' the State posited the following hypothetical: 'If the rule were changed, A could be charged with the crime; B could tell C and D that he committed the crime; B could go into hiding and at A's trial C and D would testify as to B's admission of guilt; A could be acquitted and B would return to stand trial; B could then provide several witnesses to testify as to his whereabouts at the time of the crime. The testimony of those witnesses along with A's statement that he really committed the crime would result in B's acquittal. A would be barred from further prosecution because of the protection against double jeopardy. No one could be convicted of perjury as A did not testify at his first trial, B did not lie under oath, and C and D were truthful in their testimony.' Obviously, 'B's' absence at trial is critical to the success of the justice-subverting ploy.

the introduction of evidence which in fact is likely to be trustworthy have long existed. The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to Chambers' defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice."

It is our view, and that of the Superior Court in *Commonwealth v. Hackett, supra,* that, by its decision in *Chambers, supra,* the Supreme Court did not intend that every declaration against penal interest must be admitted into evidence. Rather, it is only those hearsay declarations which "were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability." Id. at 300, 93 S. Ct. at 1048.

In the instant case, the hearsay admission against penal interest was allegedly made, as indicated previously, to appellant's girlfriend. Furthermore, the only corroborative evidence offered to show the reliability of Daniel's admission that he had committed the crime, other than the testimony of appellants, was the testimony of Nathaniel Paulin, who was originally arrested with appellants. According to the witness Paulin, the two appellants, Daniels, and a man named Henderson were all riding in an automobile on the day of the robbery. Shortly before the robbery was alleged to have occurred, Daniels and Henderson left the automobile, but Paulin and the two appellants remained. Paulin further testified that he and the appellants were totally unaware that any robbery had taken place until they learned of the crime from the police at the time of their arrest.

The Commonwealth argues that the evidence related above should be deemed insufficient to establish that the declaration against interest allegedly made by Daniels was reliable. We are reluctant to make that decision on the basis of the transcript alone, since we did not hear the witnesses. Furthermore, since this case was tried before *Chambers* and *Hackett* were decided, and under the law then existing, Miss Edwards' testimony would clearly not have been admissible in any case, see *Commonwealth v. Somershoe*, 217 Pa. Superior Ct. 156, 269 A.2d 149 (1970), appellants would have had no reason to lay the kind of foundation which *Chambers* has since held to be required before Miss Edwards' testimony could be admitted. Consequently, we believe that due process requires that appellants receive a new trial in light of the rule announced in *Chambers* and *Hackett*.

Cases remanded for a new trial to be held consistent with this opinion.

Mr. Justice NIX concurs in the result.

Mr. Justice MANDERINO took no part in the consideration or decision of this case.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I agree that James Robinson and Alfred Nash should be granted a new trial, but for reasons substantially different from those proffered by the opinion announcing the judgment of the Court. In my judgment, this Court should adopt as part of the common law of evidence the view permitting extrajudicial declarations against penal interest to be admitted into evidence as an exception to the hearsay rule. No need would then exist to consider the constitutional issues presented by these cases. Cf. *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038 (1973).

To my knowledge, there are no decisions of this Court or of the Superior Court holding that declarations against penal interest are inadmissible.[1] No precedent inhibits our adopting a rule permitting the admissibility of declarations against penal interest.

The law of this Commonwealth has, however, long been that declarations against pecuniary or proprietary interest are admissible as a hearsay exception. E.g., *Beardsley v. Weaver*, 402 Pa. 130, 132, 166 A.2d 529, 530 (1961) (alternate holding); *Rudisill v. Cordes*, 333 Pa. 544, 549-50, 5 A.2d 217, 219 (1939); *Gracie's Estate*, 158 Pa. 521, 27 A. 1083 (1893); *Taylor v. Gould*, 57 Pa. 152, 156-57 (1868); *Welsh v. Cooper*, 8 Pa. 217, 221-22 (1848); *Harrisburg Bank v. Tyler*, 3 W. & S. 373 (Pa. 1842). See generally 5 J. Wigmore, Evidence §§1455-77 (3d ed. 1940); McCormick's Handbook of the Law of Evidence §§276-79 (2d ed. E. Cleary 1972); S. Feldman, Pennsylvania Trial Guide §7.56 (rev. ed. 1973). I perceive no logical foundation to support different treatment for declarations against penal interest.

The cases usually relied upon as authority for the proposition that a declaration against penal interest is inadmissible are *Commonwealth v. Somershoe*, 217 Pa. Superior Ct. 156, 269 A.2d 149 (1970); *Commonwealth v. Honigman*, 216 Pa. Superior Ct. 303, 264 A.2d 424 (1970); *Commonwealth v. Antonini*, 165 Pa. Superior Ct. 501, 69 A.2d 436 (1949). Cf. S. Feldman, Pennsylvania Trial Guide §7.56 (rev. ed. 1973). Both *Somershoe* and *Honigman* were simply per curiam opinionless affirmances.[2] Thus, no ratio decidendi can

---

[1] Indeed, one trial court has opined that declarations against penal interest, where probative, are properly admissible. *Commonwealth v. Robbins*, 18 Bucks County L. Rptr. 158, 163-64 (Pa. Q.S. 1968).

[2] In *Commonwealth v. Honigman*, 216 Pa. Superior Ct. 303, 303, 264 A.2d 424, 424 (1970), Judge HOFFMAN forcefully and persuasively

be extracted from these decisions. *Antonini* can be easily distinguished because there the declaration, a suicide note by a decedent, was offered to inculpate the accused, and therefore its introduction would violate the confrontation clause.[3] More recently, the Superior Court has permitted declarations against penal interest, in certain circumstances,[4] to be admitted into evidence.

argued in favor of the admissibility of declarations against penal interest. See also *Commonwealth v. Somershoe*, 217 Pa. Superior Ct. 156, 157, 269 A.2d 149, 149 (1970) (dissenting opinion).

[3] Cf. *Roberts v. Russell*, 392 U.S. 293, 88 S. Ct. 1921 (1968) (per curiam) ; *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620 (1968) ; *Barber v. Page*, 390 U.S. 719, 88 S. Ct. 1318 (1968) ; *Douglass v. Alabama*, 380 U.S. 415, 85 S. Ct. 1074 (1965) ; *Pointer v. Texas*, 380 U.S. 400, 85 S. Ct. 1065 (1965) ; *Mattox v. United States*, 156 U.S. 237, 15 S. Ct. 337 (1895). But cf. *Dutton v. Evans*, 400 U.S. 74, 91 S. Ct. 210 (1974) ; *California v. Green*, 399 U.S. 149, 90 S. Ct. 1930 (1970).

[4] I view as completely unacceptable the adoption of the guidelines enunciated in *Commonwealth v. Hackett*, 225 Pa. Superior Ct. 22, 307 A.2d 334 (1973). In *Hackett*, the Superior Court instructed trial courts that the admissibility of declarations against penal interest was mandatory when they "(1) exculpate the defendant from the crimes for which he is charged; (2) are inherently trustworthy in that they are written or orally made to reliable persons of authority or those having adverse interests to the declarant; and, that they are made pre-trial or during the trial itself. Id. at 29-30, 307 A.2d at 338.

These standards, in my judgment, are unduly restrictive of the trial court's discretion and impose irrelevant conditions on the admissibility of declarations against penal interest. By its nature, evidence lends itself only to ad hoc decisionmaking, with the decisions based on the particular facts and circumstances of a given case. As an appellate court, removed from the trial arena, we can only delimit the broad contours of admissibility. After all, it is the trial court's task, and duty, to weigh and sift in the first instance the facts and arguments for and against admissibility. In my view, a declaration against penal interest should be admitted if its proponent can show that the declaration states facts that are against the penal interest of the declarant, and that the declarant

*Commonwealth v. Hackett*, 225 Pa. Superior Ct. 22, 307 A.2d 334 (1973).

The exclusion of declarations against penal interest from the hearsay exceptions has been severely and vigorously criticized. 5 J. Wigmore, Evidence §§1476-77 (3d ed. 1940);[5] McCormick's Handbook of the Law of

————————

is unavailable at the time of trial. McCormick's Handbook of the Law of Evidence §276 (2d ed. E. Cleary 1972).

More particularly, I find troublesome the requirement that declarations against penal interest must be "inherently trustworthy in that they are written or orally made to reliable persons of authority or those having adverse interests to the declarant." Who is a person of authority? Is his reliability at issue? Is the testimony of a bartender, who has never heard of or seen the accused, but to whom a declarant confesses guilt of the crime with which the accused is charged, not to be admitted because the bartender is not "adverse," but rather "neutral"? Indeed, under the *Hackett* test, several of the witnesses in *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038 (1973), would not have been allowed to testify for they were friends both of Chambers and of the declarant. Like the instant case, and I suppose like many others, the participants in *Chambers* were closely linked by friendship and betrayal.

In the view of the opinion announcing the judgment, the mandate in the instant case, see *Hackett; Chambers*, is constitutionally compelled. To my thinking, there is nothing in the United States or Pennsylvania Constitutions that requires the adoption of such wooden and specific standards for such a discretion-laden question as the admissibility of evidence.

[5] "The only practical consequences of this unreasoning limitation [on the admissibility of declarations against penal interest] are shocking to the sense of justice; for, in its commonest application, it requires in a criminal trial, the rejection of a confession, however well authenticated, of a person deceased or insane or fled from the jurisdiction (and therefore quite unavailable) who has avowed himself to be the true culprit. The absurdity and wrong of rejecting indiscriminately all such evidence is patent . . . .

. . . .

"It is therefore not too late to retrace our steps, and to discard this barbarous doctrine, which would refuse to let an innocent accused vindicate himself even by producing to the tribunal a perfectly authenticated written confession, made on the very gallows,

Evidence §278 (2d ed. E. Cleary 1972); *Donnelly v. United States*, 228 U.S. 243, 277-78, 33 S. Ct. 449, 461 (1913) (HOLMES, J., dissenting); *United States v. Annunziato*, 293 F.2d 373, 378 (2d Cir.) (FRIENDLY, J.), cert. denied, 368 U.S. 919, 82 S. Ct. 240 (1961). The exclusion has been rejected by the proposed federal rules of evidence, Committee on Rules of Practice & Procedure, Rules of Evidence for the United States Courts and Magistrates rule 804(b)(4) (rev. draft 1973), as well as by earlier codifications of the law of evidence, Uniform Rule of Evidence 63(10); Model Code of Evidence rule 509(1) (1942).

Several states have permitted partial exceptions to the rule of exclusion. E.g., *People v. Lettrich*, 413 Ill. 172, 176-80, 108 N.E.2d 488, 491-92 (1952); *Hines v. Commonwealth*, 136 Va. 728, 738-50, 117 S.E. 843, 846-49 (1923).[6] Others, jettisoning the illogical past, have modernized their rules of evidence to admit declara-

---

by the true culprit now beyond the reach of justice. Those who watched (in 1899) with self-righteous indignation the course of proceedings in Captain Dreyfus' trial should remember that, if that trial had occurred in our own Courts, the spectacle would have been no less shameful if we, following our own supposed precedents, had refused to admit what the French Court never for a moment hesitated to admit,—the authenticated confession of the absconded Major Esterhazy, avowing himself the guilty author of the treason there charged, and now known beyond a doubt to have been the real traitor." 5 J. Wigmore, Evidence §1477, at 289-90 (3d ed. 1940) (footnotes amitted).

[6] See also *State v Larsen*, 91 Idaho 42, 48-49, 415 P.2d 685, 691-92 (1966); *Dyson v. State*, 238 Md. 398, 407, 209 A.2d 609, 614 (1965), vacated and remanded on other grounds, 383 U.S. 106, 86 S. St. 717 (1966); *Brady v. State*, 226 Md. 422, 174 A.2d 167 (1961), aff'd sub nom. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963); *Thomas v. State*, 186 Md. 446, 47 A.2d 43 (1946); *Osborne v. Purdone*, 250 S.W.2d 159 (Mo. 1952); *Sutter v. Easterly*, 354 Mo. 282, 189 S.W.2d 284 (1945); *Cameron v. State*, 153 Tex. Crim. 29, 217 S.W.2d 23 (1949); *Newberry v. Commonwealth*, 191 Va. 445, 61 S.E.2d 318 (1950).

tions against penal interest. E.g., *People v. Spriggs,* 60 Cal.2d 868, 389 P.2d 377, 36 Cal. Rptr. 841 (1964) (Traynor, J.); *State v. Leong,* 51 Hawaii 581, 465 P. 2d 560 (1970); *People v. Brown,* 26 N.Y.2d 88, 257 N.E.2d 16, 308 N.Y.S.2d 825 (1970); N.J.R. Evid. 63(10); Wis. R. Evid. §908.045(4). In still others, a confession to a crime has been deemed to be also against the declarant's pecuniary or proprietary interest, and thus admissible. E.g., *Weber v. Chicago, R.I. & P. Ry.,* 175 Iowa 358, 382-83, 391-97, 151 N.W. 852, 861, 864-65 (1916); *G. M. McKelvey Co. v. General Casualty Co.,* 166 Ohio St. 401, 142 N.E.2d 854 (1957); *Aetna Life Insurance Co. v. Strauch,* 179 Okla. 617, 619-20, 67 P.2d 452, 455 (1937).

A statement that subjected the declarant to possible criminal sanctions could hardly be considered anything but against interest. The limitation of the exception to declarations against pecuniary and proprietary interests is grounded in the belief that they are less likely to be motivated by extraneous considerations and provide less inducement to perjury. This reasoning is unsound. If the object of the present lawsuit were a $100,000,000 judgment, can one doubt that there would be any less incentive to swear falsely? Viewing the materialistic limitation from a different perspective, the New York Court of Appeals stated: "[T]he distinction which would authorize a court to receive proof that a man admitted he never had title to an Elgin watch, but not to receive proof that he had admitted striking Jones over the head with a club, assuming equal relevancy of both statements, does not readily withstand analysis." *People v. Brown,* 26 N.Y.2d 88, 91, 257 N.E.2d 16, 17, 308 N.Y.S.2d 825, 827 (1970).

In any event, circumstances assuring reliability go to the weight of the evidence. See *Rau v. First National Stores,* 97 N.H. 490, 494-95, 92 A.2d 921, 924 (1952). If the declaration is incredible or is testified to by an incredible witness, the factfinder is free to disbelieve

the testimony. By cross-examination, opposing counsel is able to probe testimony for weakness, inconsistencies, or the interest of a witness. This, and not admissibility, is the safeguard for incredible testimony.

The question whether the exclusion of declarations against penal interest is a sensible rule has been succinctly addressed by Professor Wigmore. "[The exclusion] cannot be justified on grounds of policy. The only plausible reason of policy that has ever been advanced for such a limitation is the possibility of procuring fabricated testimony to such an admission if oral. This is the ancient rusty weapon that has always been brandished to oppose any reform in the rules of Evidence, viz., the argument of danger of abuse. This would be a good argument against admitting any witnesses at all, for it is notorious that some witnesses will lie and that it is difficult to avoid being deceived by their lies. The truth is that any rule which hampers an honest man in exonerating himself is a bad rule, even if it also hampers a villain in falsely passing for an innocent." 5 J. Wigmore, Evidence, §1477, at 288-89 (3d ed. 1940) (footnote omitted).

The rule that declarations against penal interest are inadmissible hearsay is supported by neither reason nor logic nor policy. In Pennsylvania it is not even supported by precedent. As I see it, our common law of evidence should permit declarations against penal interest to be admissible as a hearsay exception.

It is, therefore, my view that at their new trial, in order for the tendered declaration against penal interest to be admissible, appellants must show that the declaration states facts that are against the penal interest of the declarant, and that the declarant is unavailable at the time of trial. McCormick's Handbook of the Law of Evidence, §276 (2d ed. E. Cleary 1972).

I concur in the result.

Mr. Chief Justice JONES and Mr. Justice POMEROY join in this concurring opinion.